UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____
                                          :
MARK B. GALVIN                            :
JENNY GALVIN                              :
                                          :
        Petitioners                       :
                                          :        Civil Action No. 1:12-CV-00320-JL
             v.                           :
                                          :
EMC MORTGAGE CORPORATION,                 :
ET AL                                     :
                                          :
        Respondents                       :
                                          :
_____:


**PETITIONERS' MEMORANDUM OF LAW
IN SUPPORT OF OBJECTION TO RESPONDENTS' MOTION TO DISMISS**

NOW COME Mark B. Galvin and Jenny Galvin, (the "Galvins") by and through their

attorneys, Alfano Law Office, PLLC, and respectfully submit the within Memorandum of Law in

Support of their Objection to Respondent's Motion to Dismiss.

**I.    ARGUMENT**

**Count I – Breach of Contract**

"Extrinsic evidence is admissible when it serves to aid in interpretation, or to clarify an

ambiguity rather than to contradict unambiguous terms of a written agreement." *Ouellette v.

Butler,* 125 N.H. 184, 187-188 (1984) (internal quote omitted).  The August 2009 Agreement is

ambiguous on its face; therefore, parol evidence should be admitted to clarify its meaning.  The

total amount past due is stated as being $41,945.79, while the amount the Galvins were required

to pay over the six month period was $59,400.00.  Respondents assert the $59,400 was given in

1

exchange for Respondent EMC's agreement not to commence a foreclosure during the six month period.  According to Respondents' logic, the Galvins paid $17,454.21 ($59,400 - $41,945.79) for this benefit.  The agreement is silent as to how the $59,400 would be applied.  Would it be applied against principal? Interest?  A combination? Neither?

To the extent this Court should agree with Respondents' characterization of the August 2009 Agreement as being unambiguous, Petitioners request the court's decision be without prejudice to permit Petitioner to request leave to amend its complaint to include additional facts, such as details of Mr. Galvin's telephone conversation with "Jason" on or about August 28, 2009 during which Jason considered financial information provided by Mr. Galvin in calculating the $9,900 payment, characterized the agreement as part of a "trial payment plan," and gave Mr. Galvin the understanding the amount of the modified monthly payments would be approximately $9,900.

Petitioners also intend to request leave to modify their complaint to allege the August 2009 Agreement was an element of another agreement by EMC to process a modification application submitted by Mr. Galvin if he successfully made the six monthly payments described in the August 2009 Agreement.  EMC breached that agreement by failing to consider the merits of Mr. Galvin's application.  EMC denied Mr. Galvin's application on the incorrect grounds it had not received all documents it requested.  Mr. Galvin would like the opportunity to demonstrate he did, in fact, provide all requested materials, in some cases multiple times.

**Count II – Lack of Standing**

**Bifurcation of the Note and Mortgage (Respondents' Memorandum ¶B(i))**

Respondents attached a copy of the signed Note and allonge as Exhibit A to its Memorandum of Law.  Despite having requested a copy of the Note in his Qualified Written

Request (see *Petition* Ex. G), Petitioners saw the signed Note and allonge for the first time upon receiving Respondents' Memorandum.

The allonge purports to demonstrate the Note as being assigned to "JP Morgan Chase Bank, as Trustee." The allonge is not dated. The Mortgage, on the other hand, appears to have been assigned on May 5, 2010 to "The Bank of New York Mellon formerly known as The Bank of New York as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2005-AR7 Mortgage Pass-Through Certificates, Series 2005-AR7" (the "SAMI II Trust").

Given The Bank of New York Mellon ("BONYM") was a successor trustee to JP Morgan Chase Bank, the trust, through its trustee, did not own both the Note and Mortgage for some undetermined period of time. Furthermore, the allonge is not dated. "Although a date is not required on an indorsement to enforce a note,…the date of the indorsement is relevant in the standing inquiry." *Deutesche Bank National Trust Company, Trustee v. Monchgesang* (Hillsborough County Superior Court, Southern District, Docket No. 226-2009-CV-00200, March 28, 2012, at 10, citing Bolduc v. Beal Bank, SSB, 994 F.Supp. 82, 93 n. 10 (D.N.H. 1998)), *Petition* Ex. I. The *Monchgesang* decision dealt with a post-foreclosure situation where the court could not determine whether the foreclosing party held both the note and mortgage at the time the foreclosure proceedings began.

The allonge also does not identify the name of the trust for which JP Morgan Chase Bank was acting as trustee. For simplicity, this memorandum assumes the trust was the SAMI II Trust, but Petitioners do not concede that important fact.

The case at hand was commenced to stop a scheduled foreclosure auction where the Petitioners had no knowledge of who held or owned the Note. Respondents have now produced

the Note.  Should this court determine the Respondent Bank of New York Mellon, Trustee, does, in fact, own both the Note and Mortgage, Petitioners re-assert their request for attorneys' fees.  A lawsuit should not have been required to reveal this information.

To the extent this court should decide there is any merit to Respondents' argument, Petitioners request the court's decision be without prejudice to permit Petitioner to request leave to amend its complaint to address any deficiency.  Petitioner's amended complaint may re-fashion its "lack of standing" count as a request for a declaratory judgment concerning Respondents' title and ability to enforce the Mortgage.  See *Moore v. Mortgage Electronic Registration Sys., Inc*, 2012 D.N.H. 021.  Petitioner intends to include a claim for a breach by Respondents or their predecessors in title of paragraph 20 of the Mortgage, which requires sales of the Note be done "together with" the Mortgage.  As explained above, the documents available thus far demonstrate the Note purportedly was assigned to the SAMI II Trust (or some other trust) at some indeterminate date prior to the assignment of the Mortgage to the trust.

**Thirty-Day Notice (Respondents' Memorandum ¶B(ii))**

Paragraph 22 of the Mortgage requires various information be provided the mortgagor prior to the initiation of foreclosure proceedings.  *Petition* Ex. B.  Respondents' Memorandum quotes the contents of the notice on the bottom of page 11.  Respondents do not deny this notice was not provided in 2012, but argue the Petition should set forth each piece of information Respondents failed to provide Petitioners.

Respondents also argue the acceleration notice provided the Galvins in 2010 in connection with the first attempt to foreclose on their home (see *Petition* ¶¶ 39 et seq.) satisfied the requirements of paragraph 22 with respect to the second attempt two years later.  The requirements include a statement of the default and what is required to cure default.  Assuming

4

the default was nonpayment, the amount stated in the 2010 acceleration letter certainly would not apply two years later.  A different servicer was in place in 2012 as well.  JP Morgan Chase Bank, N.A. was the new servicer, but adopted the name of the old servicer, EMC Mortgage, as a trade name.  *Petition* ¶68.

In recognition of the "substantial power that the statutory scheme affords to a mortgage holder to foreclose without immediate judicial oversight, [courts] adhere to the familiar rule that 'one who sells under a power [of sale] *must follow strictly by its terms*. If he fails to do so there is no valid execution of the power, and the sale is wholly void."  *Miroslav Zecevic v. U.S. Bank National Association et. at*. (Belknap County Superior Court No. 10-E-196; Order dated January 20, 2011 at 5) (internal cite omitted) (emphasis added).  Paragraph 22, in fact, is prefaced with a statement that it (the entire paragraph) represents a covenant binding on both parties, underscoring the importance of those provisions to the borrower.

Petitioners submit the power of sale in the Galvin's mortgage includes all the provisions of paragraph 22.  Paragraph 22 contains the "statutory power of sale" language and procedures to be followed to conduct a foreclosure, as well as the notice provisions discussed above.  According to Respondents' argument, the Respondents were required to follow some portions of paragraph 22, but not others.  (Respondents certainly would concede the auction notices required by RSA 479:25, incorporated by reference in paragraph 22, would need to be re-sent, for example.)  There is nothing in paragraph 22 to support the position that some actions taken by the lender in 2010 would not need repeating in 2012 while others would.

To the extent this court should decide there is any merit to Respondents' arguments, Petitioners request the court's decision be without prejudice to permit Petitioner to spell out each piece of information required in the thirty-day notice and more thoroughly set forth

Respondents' failure to honor paragraph 22 of the Mortgage. As stated previously, Petitioner intends to include a claim for a breach by Respondents or their predecessors in title of paragraph 20 of the Mortgage, which requires sales of the Note be done "together with" the Mortgage.

### Terms of the Trust (Respondents' Memorandum ¶B(iii))

As noted previously, the allonge attached to the Note (Respondents' Memorandum Ex. C) lacks any date of transfer, so it is impossible to determine exactly when the Note was transferred.   As argued in the *Petition*, if the Note was transferred into the SAM II Trust after the two year deadline date (*See* Sec. 2.04 of the SAM II Trust), the transfer was invalid, but there is no way of knowing that, unless the Respondent can confirm the date of transfer.

To the extent this court should decide there is any merit to Respondents' argument, Petitioners request the court's decision be without prejudice to permit Petitioner to request leave to amend its complaint to address any deficiency.

### Conflict of Interest (Respondents' Memorandum ¶B(iv))

The issue Petitioner's wish to raise with respect to Beth Cottrell, the individual signing the document purportedly assigning the Mortgage from Mortgage Electronic Systems, Inc., as nominee, to Bank of New York Mellon, Trustee (see Petition Ex. C), is the absence of any evidence of her authority to sign the document, other than the document itself. Petitioners anticipate re-casting its "lack of standing" and "avoidance of mortgage" claims as a declaratory judgment claim in the amended complaint it anticipates asking leave to file. Since filing the Petition, Petitioners have obtained an unsigned copy of a deposition taken of Ms. Cottrell on May 27, 2010, two months after she signed the Galvins' Assignment of Mortgage as Vice President of Mortgage Electronic Registrations Systems, Inc. (Petition Ex. C) setting forth her employment status at the time she signed the Galvins' Assignment of Mortgage.

**Count III, IV, V - Negligence Claims Against EMC, BONYM, and MERS**

With respect to the economic loss doctrine, the principle "operates generally to preclude contracting parties from pursuing tort recovery for *purely economic* or commercial losses associated with the contract relationship." *Wyle v. Lees*, 162 N.H. 406, 410 (2011) (quoting from *Plourde Sand & Gravel v. JGI Eastern, 154 N.H. 791, 794 (2007)* (emphasis added). The relief Petitioner seeks is equitable, namely, to stop the foreclosure of their home until Respondents can demonstrate the right to do so. While the negligence claims do, in fact, seek damages, they are derivative from the equitable relief Petitioners' seek.

Even if the doctrine were to apply, Petitioners fall within the negligent misrepresentation exception endorsed by *Wyle*, at least with respect to EMC and "Jason's" inducements to have Mr. Galvin enter into the August 2009 Agreement. See discussion concerning Counts I and X.

The Galvins also fall within the "special relationship" exception articulated in *Ploude Sand & Gravel v. JGI Eastern*, 154 N.H. 791 (2007). The relationship between design professionals and contractors, between attorneys and intended beneficiaries of a testator/client, and between insurance investigators and insureds are three examples cited in that case. Petitioners maintain a similar special relationship exists between the Galvins and EMC, Bank of New York Mellon, Mortgage Electronic Registration Systems, Inc. ("MERS") and JP Morgan Chase Bank, N.A. Petitioners request this court not dismiss its negligence claims so Petitioner may advance these theories through discovery.

**Count VI – Breach of the Covenant of Good Faith and Fair Dealing**

As stated earlier, Petitioners intend to request leave to modify their complaint to allege the August 2009 Agreement was an element of another agreement by EMC to process a modification application submitted by Mr. Galvin if he successfully made the six monthly

payments described in the August 2009 Agreement.  Because the loan modification element was part of the contract (the "quid" for Mr. Galvins "quo" of making the six payments) EMC was required to act in good faith and deal fairly with Mr. Galvin in fulfilling that part of the bargain. The loan modification element was an express part of a *new* contract entered into between EMC and Mr. Galvin; therefore, the cases cited by Respondent are not applicable. To the extent necessary based on this court's order, Petitioner will request leave to amend its Petition to include a breach of contract claim based on the contract proposed by EMC (through "Jason") and accepted by Mr. Galvin, and a breach of the implied covenant of good faith and fair dealing associated with that contract.

Petitioners respectfully request this court reconsider its holding in *Moore* with respect to whether the Galvins are third-party beneficiaries of the HAMP Servicer Participation Agreement entered into with EMC.  The court noted in its decision that "[t]he Moores do not point to any other provision of the SPAs, or allege any other facts, plausibly suggesting that they are among the intended third-party beneficiaries of" the Servicer Participation Agreements.  Petitioners would like the opportunity to present evidence on this point, such as the second "WHEREAS" clause in the March 2010 agreement, which states that "the primary purpose" of the predecessor version of the agreement, which was amended and restated by the March 2010 version, "was the modification of first lien mortgage loan obligations and the provision of loan modification and foreclosure prevention services relating thereto."

**Count VII – Breach of Contract – Third-Party Beneficiary**

Petitioners' request this court revisit its third-party beneficiary holding in *Moore* as it relates to the EMC's HAMP Servicer Participation Agreement applies to Petitioners' third party beneficiary count as well.  "A third-party beneficiary relationship exists where, for example, 'the

contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract.'" *Grossman v. Murray*, 144 N.H. 345, 347 (1999) (internal quote omitted).  As quoted above, the *primary purpose* for the EMC HAMP Servicer Participation Agreement is to modify home mortgages, the clear beneficiaries of which are homeowners.  To argue that taxpayer/homeowners would tolerate the funding of *$1,237,510,000* for the EMC program (the amount stated in the March 2010 agreement) without being the intended beneficiaries does not seem reasonable.  Petitioners request this count not be dismissed so Petitioners may introduce additional evidence on the issue of whether the Galvins were among the intended third-party beneficiaries of the EMC HAMP Servicer Participation Agreement.

**Count VIII – Fraud in Inducement**

In short, Petitioners have pled that Respondent EMC induced the Galvins to enter into what the Galvins believed to be a repayment plan that, if completed successfully, would result in a permanent loan modification or refinance, based on statements "Jason" made either with knowledge of their falsity or with conscious indifference to the truth.  *Petition* ¶¶ 144-150; *Van Der Stok v. Van Voorhees*, 151 N.H. 679, 681 (2005).

To the extent this Court should agree with Respondents' assertion that more specific facts need to be pled to satisfy Fed. R. Civ. P. 9(b), Petitioners will request leave to file a First Amended Complaint, which will include additional facts to eliminate Respondents' grounds for dismissal, such as details of Mr. Galvin's telephone conversation with "Jason" on or about August 28, 2009 during which Jason considered financial information provided by Mr. Galvin in calculating the $9,900 payment, characterized the agreement as part of a "trial payment plan," and giving Mr. Galvin the understanding the amount of the modified monthly payments would

be approximately $9,900 per month.  In the alternative, Petitioners request this count be dismissed without prejudice to permit Petitioners to engage in discovery.  Petitioners would like to determine, among other things, how Jason calculated the $9,900 payments.  At this point we know EMC, through Jason, proposed monthly payments of $9,900 for a six month period (*Petition* Ex. E).  We also know EMC did not, in fact, modify Mr. Galvin's loan to monthly payment amounts approximating $9,900, or any other amount for that matter.  Despite Mr. Galvin's repeated compliance with EMC's document requests, EMC actually denied the request, claiming Mr. Galvin had not provided them with the requested documents.  Mr. Galvin would like the opportunity to demonstrate he did, in fact, provide all requested materials, in some cases multiple times.  He also would like the opportunity to determine whether Jason knew, or had reason to know, Mr. Galvin's house would be cued up for foreclosure immediately following Mr. Galvin fulfilling his side of the August 2009 Agreement.

**Count IX – Fraud**

To the extent this Court agrees with Respondents' defenses to this claim, Petitioners request the decision be without prejudice to permit Petitioner to engage in discovery to and, if appropriate, request leave to amend their complaint to include this count.  For example, Petitioners would like the opportunity to review signed transcripts of Beth Cottrell depositions to determine how she could represent herself, on behalf of MERS and, by extension, BONYM, as a duly authorized officer with power to sign the Galvins' assignment of mortgage.

**Count X-XI Negligent Misrepresentation**

The circumstances surrounding the formation of the August 2009 Agreement fall outside the terms of the Note and Mortgage and, therefore, are not subject to the economic loss doctrine. See, generally, discussion concerning negligence claims (Counts III, IV and V), above.

The Galvins already were party to a loan contract (the promissory note) and mortgage. (A promissory note is a "claim for money due under a contract in writing." *Redfield v. Abbot*, 335 Mass. 208, 209 (1957) (citations omitted).)  The note states that the Galvins' promises are in consideration of their receipt of the loan amount.  The mortgage states that both the borrower and lender "covenant and agree as follows…."  As the apparent assignee of those agreements, BONYM, through its agent EMC, owed Petitioners a duty to act in good faith and deal fairly. <u>See</u> discussion on Count VI, above.

To the extent this Court should agree with Respondents' assertion that more specific facts need to be pled to satisfy Fed. R. Civ. P. 8(2)(a), Petitioners will request leave to file a First Amended Complaint, which will include additional facts to eliminate Respondents' grounds for dismissal, such as details of Mr. Galvin's telephone conversation with "Jason," etc. (see earlier discussions on this point).

**Count XII-XIII Avoidance of Mortgage**

The Respondents cite *Moore*, 2012 DNH 021, as authority that an "Avoidance of Mortgage" is not a recognized cause of action in New Hampshire. The court in that case actually interpreted the petitioner's avoidance of note claim as a declaratory judgment action. Petitioners' lack of standing count and subcounts (Count II) and its avoidance of mortgage counts (XII and XIII) challenge the efficacy of the Respondents' ability to foreclose on the Galvins' mortgage, including a separate lack of consideration claim with respect to Jenny Galvin.  Therefore, to the extent this Court should agree with Respondents' assertion that "avoidance of mortgage" is not a cause of action, Petitioners will request leave to file a First Amended Complaint, which will recast its "avoidance of mortgage" claim as a declaratory judgment action, per the court's suggestion in <u>Moore</u>.  If necessary, Petitioners will add its "lack

of standing" claims in the declaratory judgment claim.

**Count XIV – Truth in Lending Act 15 U.S.C.A § 1601 et seq.**

The Respondents claim that the Petitioner's claim fails, because the acts alleged do not fall within the one year statute of limitations applicable to causes of action grounded in the Truth in Lending Act. The Respondent cites *Moore*, 2012 D.N.H. 021. The doctrine of Equitable Tolling is appropriate in this case unlike in *Moore* because the homeowner had no way to discover the loan had been sold to any of the Respondents until and unless they were notified, which they never were.

Under 15 U.S. C. § 1641(g) (1), the Galvins were entitled to notice that their mortgage had been sold or otherwise transferred or assigned to a third party. They received no notification from of the assignment to BONYM. They were not informed until almost a year later, in April, 2011, that the creditor to whom the debt was owed was "Wells Fargo Master." They obtained this information in response to their Qualified Written Request. Even then, there was no contact information for Wells Fargo Master, so they had no way of contacting them by mail or telephone to discuss their mortgage. There is no evidence Wells Fargo Master was ever involved in any aspect of the Galvin loan. Wells Fargo Master appears to have disappeared from the scene after that point.

The Galvins were not notified their promissory note had been assigned to the SAMI II Trust until they received Respondents' Motion to Dismiss, with the note and allonge attached.

"[E]quitable tolling of a federal statute of limitations is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Moore*, quoting *Salois v. Dime Sav. Bank, FSB*, 128 F.3d 20, 25 (1st Cir. 1997). Certainly that is the case here. Furthermore, Petitioners likely will pursue in discovery where Wells Fargo Master

fits into the story.  If Wells Fargo was never actually part of the Galvin note and mortgage chain of title, Petitioners will include in its damage claim attorneys' fees incurred chasing down the actual owner of the note and mortgage.

**Count XV – Promissory Estoppel**

Under the theory of promissory estoppel, "a promise reasonably understood as intended to induce action is enforceable by one who relies upon it to his detriment or to the benefit of the promisor."  *Panto v. Moore Bus. Forms, Inc.*, 130 N.H. 730, 738 (1988)  The detrimental reliance incurred by the Galvins was, at a minimum, the extra $17,000 they paid above the amount they actually owed, as set forth in the August 2009 Agreement.

WHEREFORE, Petitioners request this Honorable Court:

A.  Deny Respondents' Motion to Dismiss;

B.  In the alternative, grant Petitioners leave to amend their complaint, as more specifically set forth in the accompanying Memorandum of Law; and

C.  Grant such other and further relief as this Court deems just and equitable.

Respectfully submitted,
Petitioners,
Mark B. Galvin and Jenny Galvin
By their attorneys,

Alfano Law Office, PLLC

Dated: October 22, 2012               By:   /s/ Paul J. Alfano
Paul J. Alfano, Esquire (#346)
4 Park Street
Concord, NH  03110
(603) 226-1188

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of October, 2012 I forwarded a copy of the foregoing Petitioners' Memorandum in Support of Objection to Respondents' Motion to Dismiss to all parties of record electronically via ECF.

/s/ Paul J. Alfano
Paul J. Alfano