UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

———————————————————————

MARK B. GALVIN                                    :
JENNY GALVIN                                      :
                                                  :
     Plaintiffs,                                :
                                                  :
v.                                                :        Civil Action No. 1:12-CV-00320-JL
                                                  :
EMC MORTGAGE CORPORATION,                          :
ET AL                                             :
                                                  :
     Defendants.                                :
                                                  :
———————————————————————    :


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants EMC Mortgage Corporation ("EMC")[1], JPMorgan Chase Bank, N.A. ("JPMorgan"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Bank of New York Mellon, Trustee ("Mellon") (collectively, the "Defendants"), by their attorneys, Preti, Flaherty, Beliveau & Pachios, PLLP, respectfully submit the within Memorandum of Law in support of their Motion for Summary Judgment.

## I.      INTRODUCTION

The Plaintiffs' Amended Complaint alleges three claims:  (1) Defendants did not have standing to non-judicially foreclose on their property; (2) EMC violated the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, by failing to properly respond to a Qualified Written Request; and (3) the Defendants violated New Hampshire's Consumer Protection Act, RSA 358-A.  Defendants now move for summary judgment.  As this Court articulated in its previous dismissal Order, the Plaintiffs' standing arguments fail as a matter of law.  Moreover,

---

[1] EMC Mortgage Corporation is now known as EMC Mortgage LLC.

the Plaintiffs cannot dispute in good faith that the original Note and Mortgage exist and that Mellon, the only entity seeking to foreclose, has possession of both original documents.   The RESPA claim fails because the Plaintiffs cannot prove they sent a Qualified Written Request to Defendants, that JP Morgan's response was insufficient, or that they suffered actual damages as a result of any RESPA violation.   Finally, the Plaintiffs fail to state a claim for violation of RSA 358-A because Mellon and JPMorgan are exempt from the statute and none of the Plaintiffs' allegations rise to the level of "rascality" required to show an unfair or deceptive act under the statute.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

In August 2005, Mark Galvin executed a promissory note in the amount of $2.9 Million to Metrocities Mortgage LLC (the "Note").  First Amended Petition ("Amended Pet.") (Doc. No. 29) ¶18; Exh. A (the Note).   Attached to the Note is an allonge with an assignment from Metrocities Mortgage, LLC to JPMorgan Chase Bank, as Trustee.  Exh. A at p. 7.

At the same time, Mark and Jenny Galvin executed a mortgage on their property in Rye, New Hampshire, securing the Note (the "Mortgage").  Amended Pet. (Doc. No. 29) ¶19.  Exh. B (Mortgage).  The Mortgage identifies MERS as the mortgagee in its capacity as "nominee for [Metrocities and its] successors and assigns."  Exh. B at p. 1.   The Mortgage was duly recorded at the Rockingham County Registry of Deeds.  Amended Pet. (Doc. No. 29) ¶19; Exh. B.   In signing the Mortgage, the Galvins agreed to "mortgage, grant and convey to MERS…and to the successors and assigns of MERS with mortgage covenants, and with power of sale" the subject property.  Exh. B at p. 2.  The Mortgage specifically provides the mortgagee has "the right to foreclose and sell the Property." *Id.* at p. 3.

In June 2009, Mark Galvin stopped making payments on the Note and in August 2009,

2

Mr. Galvin entered into a repayment agreement with EMC (the "Repayment Agreement"), a copy of which is attached as Exh. C.[2]  The Repayment Agreement called for Mr. Galvin to make payments of $9,900 per month over 6 months, with the last payment due in February 2010.  Exh. C.

While the Galvins claimed they made timely payments under the Repayment Agreement,[3] there is no dispute they failed to make the regular monthly payments on the Note.  *See Galvin v. EMC Mortgage Corp*., 2013 DNH 053, 7, fn3 (Doc. No. 22) (noting Plaintiffs' counsel acknowledged at oral argument on the motion to dismiss that his clients had not made the payments).  On March 1, 2010, EMC sent Mr. Galvin an "Acceleration Warning (Notice of Intent to Foreclose)," clearly advising him "[y]ou are in default because you have failed to pay the required monthly installments commencing with the payment due 10/01/2009."  Exh. D (March 1, 2010 letter); Verified Pet. ¶39.[4]  On April 27, 2010, counsel for EMC advised Mr. Galvin they had been retained for purposes of foreclosing on the Mortgage.  *See* Exh. E (April 27, 2010 letter); Verified Pet. ¶46.

On May 5, 2010, MERS assigned the Mortgage to Mellon "as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2005-AR7 Mortgage Pass-Through Certificates, Series 2005-AR7."  *See* Amended Pet. (Doc. No. 29) ¶26; Exh. F (Assignment).  This Assignment was duly recorded in the Rockingham County Registry of Deeds on May 20, 2010.  *Id.*; Exh. F.

---

[2] Documents submitted as Exhibits that have a "G" bates-number prefix were produced as part of Plaintiffs' Initial Disclosures.

[3] These allegations are included in the Plaintiffs original Petition, ¶¶33-38.

[4] These allegations should be considered admissions.  *See Aumand v. Dartmouth Hitchcock Med. Ctr*, 611 F. Supp. 2d 78, 84 (D.N.H. 2009) ("statements in a pleading are admissible against the pleader as admissions by a party opponent, *see Fed. R. Evid. 801(d)(2)*, even if the pleading has since been amended to delete them. . .").

On May 18, 2010, Mellon's attorneys sent Mr. Galvin a "Notice of Mortgage Foreclosure Sale," scheduling a foreclosure sale for mid-June.  Exh. G (May 18, 2010 letter); Amended Pet. (Doc. No. 29) ¶31.  The Notice identified the present holder of the mortgage as the same entity to whom MERS had assigned the Mortgage, "The Bank of New York Mellon formerly known as The Bank of New York as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2005-AR7 Mortgage Pass-Through Certificates, Series 2005-AR7."  The scheduled June 2010 foreclosure did not go forward, as the Galvins engaged in "loan modification/forbearance discussions" with EMC. Amended Pet. (Doc. No. 29) ¶38.

On March 15, 2011, EMC wrote to Mr. Galvin advising him the servicing of the loan was being transferred from EMC to JP Morgan Chase Bank, N.A., which would "use the 'brand name' of EMC Mortgage when servicing the loan."  Exh. H (March 15, 2011 letter); Verified Pet. ¶68.

On May 2, 2011, Mr. Galvin wrote to EMC Mortgage (the name being used by the new servicer, JPMorgan Chase Bank, N.A.) "to complain about the accounting and/or servicing of [the] [M]ortgage…".  Exh. I (May 2, 2011 letter).  JPMorgan provided responses to Mr. Galvin in May and June 2011.  Amended Pet. (Doc. No. 29) ¶¶43, 45, 48.  Mr. Galvin produced copies of these responses, which are attached as Exhibits J (May 11, 2011 letters), K (May 13, 2011 letter), and L (June 15, 2011 letter) respectively.

On June 29, 2012, counsel for Mellon, identified in the Notice as "present holder of mortgage," sent Mr. and Mrs. Galvin a "Notice of Mortgage Foreclosure Sale," advising the sale would be on August 1, 2012.  Amended Pet. (Doc. No. 29) ¶64.  This Notice prompted the present lawsuit.

4

## III.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  *See Estrada v. Rhode Island,* 594 F.3d 56, 62 (1st Cir. 2010) (citing *Meuser v. Fed. Express Corp.,* 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law.  *Id.*  (citing *Vineberg v. Bissonnette,* 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party."  *Id.*  However, "[u]nsupported allegations and speculation do not demonstrate…a genuine issue of material fact sufficient to defeat summary judgment.  Rather, [t]o defeat a motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Rowe v. Liberty Mutual Group, Inc.*, 2013 DNH 168, 27 (internal citations and quotations omitted).

## IV.    ARGUMENT

### A.  The Plaintiffs' Attempt to Challenge the Defendants' Standing to Foreclose Fails as a Matter of Law

As in their initial Petition, Count I of the Plaintiffs' Amended Petition "advances a smorgasbord of theories" against numerous parties in a futile effort to prevent Mellon from foreclosing on the Mortgage.  *See Galvin,* 2013 DNH 053, 14 (Doc. No. 22).  The Court previously dismissed similar claims (*Id.* at 14-22), and the allegations in the Amended Petition likewise fail to state a viable claim.  The law and the undisputed facts demonstrate Mellon is entitled to foreclose on the Mortgage, making summary judgment appropriate.

6363684.1

1.      **Mellon, as the Mortgagee, is entitled to foreclose**

The Plaintiffs cannot dispute that they granted the mortgage to MERS and they do not present any recognizable challenge to the assignment to Mellon. *See* Exh. B (Mortgage) and Exh. F (the Assignment). Further, "the parties plainly intended that the mortgage would not follow the note." *Galvin*, 2013 DNH 053, 20 (Doc. No. 22). As this Court previously ruled in its April Order, under these circumstances, Mellon, as the holder of the mortgage by assignment, can proceed with foreclosure. *Id.* at 21 (citing *Dow v. Bank of N.Y. Mellon Trust Co.*, No. 218-2011-CV-1297, slip op. at 17-18 (N.H. Super. Ct. Feb. 7, 2012). *See Castagnaro v. The Bank of New York Mellon*, 2014 DNH. 008, 6-8 (relying on *Galvin,* the Court held Mellon could foreclose by virtue of holding the mortgage by assignment where the parties intended the mortgage would not follow the note).

The Plaintiffs attempt to challenge the MERS assignment of the Mortgage to Mellon based on some alleged failure to comply with the terms of the underlying trust agreement. The First Circuit has rejected such arguments, stating "claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d. 349, 354 (1st Cir. 2013).

Since Mellon holds the mortgage and the parties intended that the Mortgage would not follow the Note, it is entitled to foreclose. Summary judgment on Count I should be granted.

2.      **The Plaintiffs' attempt to challenge Mellon's status as the holder of the Note or re-litigate the "Bifurcation" issue does not save their claim**

Since Mellon is entitled to foreclose, the Plaintiffs' challenges to the assignment of the Note and their bifurcation argument do not save their claim. *See Castagnaro*, 2014 DNH 008, 8, fn5 (granting Mellon's motion to dismiss, finding that since Mellon held the mortgage and did

not need possession of the note to foreclose, it did not need to consider plaintiff's arguments regarding the note).  The Plaintiffs' efforts to fabricate a factual dispute do not change the outcome.

As an initial matter, the Plaintiffs' denial that the original Note exists (Amended Pet. (Doc. No. 29) ¶77) is disingenuous and illustrates their attempt to ignore the undisputed facts. JPMorgan, as servicer, possesses the original Note and Mortgage for Mellon and has provided copies to undersigned counsel.  *See* Defendants' previously filed Memorandum of Law in Support of its Motion to Dismiss (Doc. No. 10-1) at Exhs. A and B, and Exhs. A and B attached hereto.  Further, as the Plaintiffs are aware, the original Note and Mortgage are available at the office of undersigned counsel for inspection by Plaintiffs' counsel.  *See* Defendants' Memorandum of Law in Support of their Objection to Plaintiffs' Motion to Amend (Doc. No. 28-1) at p. 3.

The Plaintiffs' suggestion that some other entity could try to enforce the Note is just as flawed.  A review of the relevant documents demonstrates the Note signed by Mr. Galvin in favor of Metrocities Mortgage, LLC bears an endorsement from Metrocities to JPMorgan as Trustee.  *See* Exh. A.  Mellon is the successor Trustee and is properly in possession of the original Note.  *See* Assignment and Assumption Agreement dated October 1, 2006 attached hereto as Exh. M.  In addition, Mellon is the assignee of the Mortgage and thus entitled to enforce it.  *See* Exh. F.  The Assignment of Mortgage, dated May 5, 2010, was recorded in the Rockingham County Registry of Deeds, Book 5112, Page No. 0754, on May 20, 2010, assigning the Mortgage from Mortgage Electronic Registration Systems to Bank of New York Mellon as successor trustee to JPMorgan.  This Court has already ruled the Plaintiffs do not have standing to challenge alleged deficiencies in the transfer of the Note.  *See Galvin*, 2013 DNH 053, 22

(Doc. No. 22).  "[A] borrower lacks standing to challenge the transfer of a note on grounds that would merely render the transfer voidable (as opposed to void) and alleged noncompliance with a [trust agreement] is precisely such a matter."  *Id.* (internal quotations omitted).

In the end, the only other entity who could seek to enforce the Note under Plaintiffs' theory is JPMorgan, but it is making no such claim and is on record supporting Mellon's right to enforce the Note.  *See Woods*, 733 F.3d. at 356, fn. 6 (discussing plaintiff's attempt to challenge whether Wells Fargo properly held the note and pointing out it was the only financial institution that had sought to take action against plaintiff for her failure to pay her mortgage).  The Plaintiffs do not dispute the required payments are due under the Note and do not dispute the validity of the Mortgage.  As Mellon holds both the Note and the Mortgage, which is what the Galvins claim the law requires, they cannot challenge its ability to foreclose on the Plaintiffs' property.

Finally, despite this Court's previous Order, the Plaintiffs continue to challenge Mellon's standing to foreclose based upon the "bifurcation" of the Note and Mortgage interests.  *See* Amended Pet. (Doc. No. 29) ¶94(a).  This argument falls short because even the Galvins acknowledge that where the note and mortgage interests have been "reunited", non-judicial foreclosure can take place.  *See* Plaintiffs' Motion to Vacate Dismissal and to Amend Complaint (Doc. No. 25) at p. 16.  More importantly, this Court ruled in its April Order that the holder of a mortgage may foreclose in situations where there is "a disunity of the note and mortgage at the outset of the transaction and an express agreement by the borrower that the named mortgagee or its successors could foreclose."  *See Galvin,* 2013 DNH 053, 21 (Doc. No. 22) (relying on *Dow*, slip op. at 17-18).  In these situations, "the intention of the parties to the transaction can override the common law principle that the debt and mortgage are inseparable."  *See id.* at 19 (quoting *Dow*, No. 218-2011-CV-1297, slip op. at 14-16).  Accordingly, even if Mellon did not hold the

8

Note, it would be entitled to foreclose given the parties' clear intentions. *See Castagnaro*, 2014 DNH 008, 7-8.

### B. The Plaintiffs Cannot Establish EMC Violated the Real Estate Settlement Procedures Act ("RESPA")

The Plaintiffs allege EMC committed a RESPA violation in responding to Mr. Galvin's May 2, 2011 letter to EMC Mortgage. To prevail on a RESPA claim, a plaintiff must prove: 1) he drafted a QWR as defined by the statute; 2) his servicer failed to respond to the QWR as required by the statute; and 3) he suffered <u>actual damages</u> as a result of his servicer's failure to respond. 12 U.S.C. §2605(e), (e)(1)(A), (e)(1)(B)(i)-(ii), (e)(2), (f)(1) (emphasis added). The Plaintiffs cannot meet these statutory requirements. The May 2nd letter does not contain the required elements of a QWR, the Plaintiffs have not alleged a specific violation of RESPA, and the Plaintiffs cannot prove they suffered actual damage as a result of JPMorgan's response.

### 1. The May 2, 2011 letter was not a QWR.

Mr. Galvin's May 2, 2011 letter does not constitute a QWR because he failed to identify any errors in the account and the information he requested did not relate to the servicing of the loan. *See* Exh. I.

For purposes of RESPA, a qualified written request:

> …[s]hall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

6363684.1

12 U.S.C. §2605(e)(1)(B)(i-ii).  To qualify as a QWR, the borrower must "request information specifically about the servicing of the loan."  *Jones v. Vericrest Fin., Inc.*, 2011 U.S. Dist. LEXIS 151458, *45 (N.D. Ga. Dec 7, 2011).  RESPA defines servicing as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts…and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).  Loan origination documents, securitization documents, policies and procedures, and other similar information are not the type of information and documents available through a qualified written request.  *See e.g., Kelly v. Fiaron & Assoc*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012) ("Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing."); *Corazzini v. Litton Loan Serv*., 2011 U.S. Dist. LEXIS 63565, *34 (N.D. N.Y. June 15, 2011) ("[R]equests for information regarding origination-related materials, the securitization of the loan, the lender's general policies and practices, and general complaints about the lending industry do not satisfy the RESPA's 'servicing of [the] loan' requirement."); *DeVary v. Countrywide Home Loans, Inc*., 701 F.Supp. 2d 1096, 1106 (D. Minn 2010) ("RESPA does not require a servicer to respond to any question that a borrower may ask - no matter how broad, vague, or far afield.").

Here, Mr. Galvin's letter does not qualify as a QWR under the statute because it does not identify any specific reasons he believes there have been errors in the servicing of the loan.  Rather, the letter states broadly:

> I am writing to you…to complain about the accounting and/or servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

6363684.1

*See* May 2, 2011 letter, Exh. I.  The letter also includes the following statement explaining why

he is sending the letter:

> The reason for obtaining this information is verify [sic] that payments that
> have been made, and have been claimed not received by servicers, have been
> properly recorded, that late fees and other charges charged have been
> reasonable and appropriately accounted for, to find any rightful owners of
> notes to be afforded the opportunity to communicate directly with them, and
> to assure that the terms and conditions are reasonable and affordable
> throughout the term of the loan and that I was not a victim of predatory
> lending and/or servicing practices.

*See id.*  Beyond this general complaint about the "accounting and/or servicing" of Plaintiffs'

Mortgage and the apparent desire to verify that the account has been serviced properly overall,

the letter does not specify any reasons for which the Plaintiffs believe the account is in error.

Furthermore, the letter goes on to make more than 30 different document requests,

including requests for loan origination documents and securitization documents that have

nothing to do with the servicing of the loan.  Buried in the list is the one thing arguably about

servicing - the loan history - but this should not transform his letter into a QWR.  Requests for

documents like the Galvin letter are not within the scope of RESPA.  *See e.g., Kelly*, 842 F.

Supp. 2d at 1160.

### 2.  **Plaintiffs cannot prove a RESPA violation.**

Even if a portion of Galvin's May 2, 2011 letter is treated as a valid QWR, the Plaintiffs

cannot prove JPMorgan did not properly respond or that it otherwise violated its obligations

under RESPA.  In the Amended Petition, the Plaintiffs state generally that EMC "failed and

refused to provide full and complete responses" to the May 2, 2011 letter.  Amended Pet. (Doc.

No. 29) ¶98.  Notably, the Plaintiffs do not claim EMC failed to provide the payment history for

their loan which shows the payments, application of payments, and other charges.   This

information was provided to the Plaintiffs in JPMorgan's June 15, 2011 letter. *See* Exh. L at pp. 11-17.

Instead, the only specific shortcoming alleged by Plaintiffs is that EMC provided the name of the master servicer of the loan, not the noteholder. *Id.* at ¶¶98-99. Requests for the identity of the note holder are not covered by RESPA. *See Kelly*, 842 F. Supp. 2d at 1160. Moreover, providing the name of the master servicer, Wells Fargo, was in compliance with 15 U.S.C. § 1641(f)(2) (cited by Mr. Galvin in his May 2, 2011 letter), which provides the servicer may provide the name of the master servicer rather than the owner. These allegations, even construed in the light most favorable to the Plaintiffs, do not establish a failure under RESPA to respond to a legitimate QWR, making summary judgment appropriate.

### 3. Plaintiffs have not suffered any actual damages and they do not allege they are entitled to statutory damages.

The Plaintiffs' RESPA count also is futile because the Plaintiffs cannot prove they suffered any actual damages caused by a RESPA violation.

Pursuant to RESPA, if a servicer fails to provide the information required under the statute, it may be liable for "any actual damages to the borrower as a result of the failure." 12 U.S.C. §2605(f)(1)(A). "In order to plead 'actual damages' sufficiently, the plaintiff must allege specific damages and identify how the purported RESPA violations caused those damages." *Moore v. Mortgage Electronic Registration Systems, Inc.*, 848 F. Supp. 2d 107, 122 (D.N.H. 2012) (citation omitted). Plaintiffs must establish they suffered actual damages - "demonstrable damages that occur 'as a result of' the specific violation complained of" - or an entitlement to statutory damages - requiring the showing of a "pattern or practice of noncompliance" by the servicer. *See Kassner v. Chase Home Finance*, 2012 U.S. Dist. LEXIS 10358, *20 (D. Mass Jan.

27, 2012) (internal parentheses omitted); *see also*, 12 U.S.C. §2605(f)(1)(A)-(B).[5]   While a plaintiff's "actual damages" may include damages for emotional distress, "a plaintiff must present specific evidence to establish a causal link between the financing institution's violation and their injuries."  *Moore v. Mortgage Electronic Registration Systems, Inc*., 2013 DNH 065, 8 (internal quotations omitted).

The "actual damages" claimed by the Plaintiffs in Count II include being required to retain counsel, lost time from work, postage, mailing, copying, and travel costs, as well as "severe emotional distress."  Amended Pet. (Doc. No. 29) ¶100.  The Plaintiffs do not have any evidence, however, to establish the required causal link between the claimed violation and their alleged injuries.  On its face, the claim simply is not plausible.  The alleged RESPA violation - providing the name of Wells Fargo as Master Servicer instead of the actual note holder - did not cause the various "actual damages" alleged.  Instead, the prior pleadings in this case, the face of the Amended Complaint, and the Plaintiffs' own discovery responses reveal the emotional distress and attorney's fees damages Plaintiffs now claim were caused by the allegedly deficient QWR response were a reaction to the foreclosure proceedings generally.

The first foreclosure notice was in May 2010 (Amended Pet. (Doc. No. 29) ¶31), more than one year before the date of the claimed QWR and JPMorgan's responses.  There is no reference in the Plaintiffs' Verified Petition to suffering emotional distress or other damages in connection with the QWR response.  In that initial complaint, the Plaintiffs appeared to claim their emotional distress was caused by the alleged breach of the August 2009 agreement and the promises that while they were in the modification process the foreclose process would be halted. Verified Petition ¶¶33-90.  Their discovery responses likewise discuss their emotional distress

---

[5] The Plaintiffs do not allege they are entitled to statutory damages.  Any attempt to raise such a claim should be rejected, as there is no evidence to support it.  *See e.g. Moore,* 848 F. Supp. 2d at 122 (the failure to respond to two letters did not make out a pattern of noncompliance with RESPA).

6363684.1

occurring as a result of the "foreclosure process" generally, and focus on the notice of foreclosure impacting their ability to sell the property. *See* Interrogatory Responses of Jenny Galvin dated January 9, 2014, pp. 5-6 and Interrogatory Responses of Mark Galvin dated January 9, 2014, pp. 6-7, attached together as Exh. N. In explaining the actual damages alleged in paragraph 100 of the Amended Petition, Mr. Galvin explained:

> The biggest portion of the damages that the Defendants are responsible for are caused by the public notice of foreclosure auction that made the home a "troubled property" when they had no right to advertise the property for foreclosure when they did. A similar priced waterfront home in Rye that was put up for auction and sold for roughly $1.3M while another similarly priced waterfront home that was sold under normal market conditions brought $6.4M. These properties are similar to both the mentioned homes so it is clear that the "taint" caused by the foreclosure advertisement(s) would have resulted in a massive reduction in the value of our property even if we had been able to sell it before a foreclosure (which we could not because of the foregoing advertisement(s) and because we would have had to pay off the mortgage at any sale and so would have needed the "bank's" cooperation).

Exh. N. He does not suggest any causal link between the alleged QWR issue and these damages.

The claimed attorney's fees also are not causally related to the QWR response. The attorney's fees were incurred to file this action in July 2012 to stop the foreclosure, more than one year after the allegedly deficient QWR response. In their initial complaint the Galvins acknowledged the attorney's fees were incurred to bring this action. Verified Pet. ¶208. Plaintiffs are not permitted to recover damages for losses related to foreclosure activity. *Edwards v. Wachovia Mortg.*, 2011 U.S. Dist. LEXIS 114464, *10 (S.D. Cal., Oct. 4, 2011) ("A plaintiff is entitled to recover for the loss that relates to the RESPA violation, not for all losses related to foreclosure activity.").

Accordingly, because the Plaintiffs cannot prove the alleged violation caused them "actual damages," summary judgment on Count II should be granted.

14

6363684.1

## C.  The Plaintiffs Cannot Establish a Violation of New Hampshire's Consumer Protection Act

In Count III, the Plaintiffs allege all of the Defendants have violated the New Hampshire Consumer Protection Act, RSA 358-A.  Amended Pet. (Doc. No. 29) ¶¶105-116.  As an initial matter, they do not even allege MERS committed any unfair or deceptive acts.  Accordingly, MERS is entitled to judgment on this count.

The Plaintiffs' claims against Mellon and JPMorgan also are futile because RSA 358-A:3, I exempts from the Consumer Protection Act "[t]rade or commerce that is subject to the jurisdiction of…federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices."  Mellon and JPMorgan are subject to the jurisdiction of the Office of the Comptroller of the Currency.  *See* 12 U.S.C. §§ 24, 93A, 371(a).  The OCC identifies Mellon and JPMorgan as entities it regulates.  *See* printout from the OCC website printed by counsel on February 26, 2014 identifying regulated banks as of 1/31/2014, attached hereto at Exh. O, at pp. 2, 9.  "The OCC's power to regulate national banks is comprehensive." *Aubertin v. Fairbanks Capital*, 2005 DNH 021, 5.  The *Aubertin* Court found persuasive an advisory letter issued by the OCC explaining its authority to take appropriate enforcement actions against national banks and their subsidiaries that engage in unfair or deceptive acts or practices:

> Unfair and deceptive acts or practices are unlawful under federal and state law.  Section 5 of the Federal Trade Commission Act (FTC Act, 15 U.S.C § 45(a)(1)), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Under Section 8 of the Federal Deposit Insurance Act, 12 U.S.C. § 1818, the OCC may take appropriate enforcement action against national banks and their subsidiaries for violations of *any* law or regulation, which necessarily includes Section 5 of the FTC Act.

*Aubertin*, 2005 DNH 021, 5-6 (citation omitted) (emphasis in the original).  Because Plaintiffs' claims against Mellon and JPMorgan are based on conduct that is subject to the jurisdiction of a

15

federal banking regulator that has the authority to regulate their unfair and deceptive acts, Mellon and JPMorgan are exempt from suit for a violation of the CPA.

Even considering the substance of the Plaintiffs allegations, they are insufficient to state a claim against EMC or any of the Defendants under RSA 358-A.  To fall within the statute, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Barrows v. Boles*, 141 N.H. 382, 390 (1996) (quoting *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)).  Additionally, to be actionable, the cited conduct must be "'within at least the penumbra of some common-law[,] statutory[,] or other established concept of unfairness; …[be] immoral, unethical, oppressive or unscrupulous; …[or] cause substantial injury to consumers (or competitors or other businessmen).'" *Milford Lumber Co., Inc. v. RCB Realty, Inc.*, 147 N.H. 15, 19 (2001) (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5 (1972)).  Plaintiffs' allegations fall short.  They are merely a rehashing of the previous counts and do not present any new claims.  Even assuming *arguendo* these allegations are true, nothing the Defendants are alleged to have done rises to the level of "rascality" required to state a claim under RSA 358-A, making summary judgment on the count appropriate.

## 1.  The Mortgage was assigned to Mellon before the foreclosure notice

Plaintiffs allege that on the date they received notice of the foreclosure auction, May 18, 2010, the mortgage was still in the name of MERS.  *See* Amended Pet. (Doc. No. 29) ¶¶110(a).  This statement simply is not true.  According to the Assignment of Mortgage recorded at the Rockingham County Registry of Deeds at Book 5112, Page 0754, the Mortgage was assigned on May 5, 2010.  *See* Exh. F.

16

**2.   Mellon was the lawful mortgagee when it commenced foreclosure**

Plaintiffs claim Mellon was not a "lawful mortgagee" because Mellon was not the holder of both the Note and the Mortgage at the time it instituted foreclosure proceedings.  As set forth herein, the separation of the Note and Mortgage the Plaintiffs complain about was specifically contemplated at the time of the initial loan transaction and the Galvins assented to it; this evidences a clear intent by the parties that the Mortgage may not follow the Note.  Mellon is the assignee of the Mortgage and therefore is entitled to enforce it.  *See Galvin,* 2013 DNH  053, 20-21 (Doc. No. 22).

**3.   Assessing "unauthorized" fees to the Plaintiffs' loan account**

Plaintiffs do not specify the "unauthorized fees" to which they refer in their Amended Complaint, but it appears they are referring to the property preservation fees, statutory expenses, attorney advances, and other fees that they referred to earlier in their complaint.  *See* Amended Pet. (Doc. no. 29) ¶¶56-63.  At best, Plaintiffs may have alleged that they should not have to pay certain charges in an action to collect a deficiency after the foreclosure, if they are correct, but they have failed to allege that the disputed charges are the result of conduct rising to the level of "rascality" required for RSA 358-A.  *See Barrows*, 141 N.H. at 390.  The Mortgage specifically states:

> 14.  **Loan Charges.**  Lender may charge Borrower fees for services performed in connection Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.

Exh. B, p. 9, ¶14.  The Defendants did not engage in any unfair or deceptive conduct.

**4.   The responses to the May 2, 2011 letter were not unfair or deceptive**

As stated above, Plaintiffs have not properly alleged that Defendants failed to properly respond to the purported QWR request.  Plaintiffs acknowledge in their Amended Petition that

they received responses to their May 2, 2011 letter.  *See* Amended Pet. (Doc. No. 29) ¶¶43-50.

JPMorgan was specifically permitted to provide the name of the master servicer, it provided the

Note and Mortgage along with other loan documents, and it provided the payment history, so

there was nothing unfair or deceptive about the response.  *See* Exhibits J, K and L.  Even if

JPMorgan was not exempt under RSA 358-A, its responses to the letters do not rise to level

sufficient to satisfy the rascality test.

### 5.   Defendants did not commit a "fraud on the Court"

There is no good faith basis for the Plaintiffs' claim the Defendants committed a fraud on

the Court.  As outlined herein, the Note and Mortgage have been assigned to Mellon.  Moreover,

Mellon has possession of the originals of these documents.  Accordingly, this allegation is

entirely without merit.

### 6.   There was nothing unfair or deceptive in the handling of the Note and Mortgage

The Plaintiffs claim it was unfair and deceptive to "split," sell, transfer or assign the Note

and Mortgage without notice to them.  Amended Pet. (Doc. No. 29) ¶110(f).  This claim is

contradicted by the face of the documents they signed and the documents on record.  The Note

the Plaintiffs signed (promising to pay the amount owed to the Lender, Metrocities Mortgage,

LLC) states "I understand that Lender may transfer this Note.  Lender or anyone who takes this

Note by transfer and who is entitled to receive payments under this Note is called the "Note

Holder.""  Exh. A at p. 22, ¶1.  There was no requirement of notice when a transfer occurred.

The Mortgage the Plaintiffs signed granted a mortgage to MERS, which was defined as

"a separate corporation that is acting solely as a nominee for Lender and Lender's successors and

assigns."  Exh. A at p. 2.  Paragraph 20 of the Mortgage, touted by the Plaintiffs, states clearly

that "The Note or a partial interest in the Note (together with this Security Instrument) can be

sold one or more times without prior notice to the Borrower." *Id*. Again, there was no requirement to notify the Galvins of any assignment (though they received notice when the assignment was recorded at the Registry of Deeds in 2010).

As set forth above, the Note was held by the trustee JPMorgan and is now held by the successor trustee Mellon, and the Mortgage was assigned by MERS (who was the mortgagee as nominee for the Lender and its successors and assigns) to Mellon. There was nothing unfair or deceptive in the handling of the Note and Mortgage.

## V.   CONCLUSION

Accordingly, for all of the foregoing reasons, summary judgment should be granted on Counts I, II, and III of the Amended Petition.

Respectfully submitted,

EMC MORTGAGE CORPORATION,
JPMORGAN CHASE BANK, N.A.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS and
BANK OF NEW YORK MELLON, Trustee
for the Certificate Holders of Structured
Asset Mortgage Investments II Trust 2005-
AR7, Mortgage Pass-Through Certificates,
Series 2005-AR7,

By their attorneys,

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, PLLP

Dated:  February 26, 2014

*/s/ Peter G. Callaghan*
Peter G. Callaghan, NH Bar # 6811
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500
pcallaghan@preti.com

6363684.1

## **CERTIFICATE OF SERVICE**

I hereby certify this 26th day of February 2014 copies of the foregoing *Memorandum of Law* were forwarded to all counsel of record electronically via ECF.

/s/ *Peter G. Callaghan*
Peter G. Callaghan

6363684.1