UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mark B. Galvin and Jenny Galvin

         v.                          Civil No. 12-cv-320-JL
                                     Opinion No. 2014 DNH 139
EMC Mortgage Corporation et al.


**MEMORANDUM ORDER**

    This case poses a question of statutory interpretation: what
is the meaning of the term "mortgagee" in N.H. Rev. Stat. Ann.
§ 479:25, which allows "the mortgagee or his assignee" to conduct
a foreclosure under the power of sale?  Plaintiffs Mark and Jenny
Galvin argue that "mortgagee" means the entity that "owns and
holds both the borrower's note and mortgage interests."  First
Am. Petition (document no. 29) ¶ 85.  They assert that none of
the defendants--various entities who, at various times, held or
claimed to hold (or claimed to represent the holder of) their
mortgage and/or associated promissory note--is capable of showing
that it presently holds either document, and accordingly seek an
order enjoining any of them from foreclosing.  The defendants,
for their part, argue that a "mortgagee" is, simply, a party that
holds the mortgage, and assert that, in any event, defendant Bank
of New York Mellon ("Mellon"), in its capacity as Trustee for the
holders of shares in a pool of securitized mortgages, holds both
the mortgage and the note.

This court has jurisdiction over this matter under 28 U.S.C. § 1332 (diversity) because the Galvins are citizens of New Hampshire, the defendants are citizens of other states, and the amount in controversy exceeds $75,000.[1]  The defendants have moved, and the Galvins have cross-moved, for summary judgment on the Galvins' claim to enjoin foreclosure and their accompanying claim under the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A.  Both motions are denied.

The evidence reveals that Mellon does, in fact, hold the Galvins' mortgage, by virtue of an assignment from the original mortgagee.  The court cannot, however, conclude that Mellon also holds the note which that mortgage secures.  The defendants have proffered a version of the note indorsed to "JPMorgan Chase Bank, as Trustee."  They claim that this indorsement transferred the note to JPMorgan Chase Bank in its capacity as Trustee for the selfsame trust for which Mellon now serves as Trustee.  If the defendants' claim is true, this would permit Mellon to enforce the note, as discussed in more detail infra.  The defendants have not presented admissible evidence substantiating their claim,

---

[1] The court also has jurisdiction under 28 U.S.C. § 1331 (federal question) and 1367 (supplemental jurisdiction) by dint of the Galvins' claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.  The Galvins have stated an intent to abandon that claim, so this order makes no further mention of it.

however; nor have the Galvins presented any evidence that conclusively contradicts it.  So, on the current record, there is a genuine dispute of fact as to whether Mellon holds the note.

If the court is to grant summary judgment, then, it can only do so by adopting the defendants' construction of the statutory term "mortgagee," which would not require possession of the note to foreclose.  The New Hampshire Supreme Court has not yet had occasion to address the meaning of that term.  When confronted with such a state of affairs, this court must "make an informed prophecy of what [that] court would do in the same situation." Bartlett v. Mut. Pharm. Co., Inc., 731 F. Supp. 2d 135, 154-55 (D.N.H. 2010), aff'd, 678 F.3d 30 (1st Cir. 2012), rev'd on other grounds, 133 S. Ct. 2466 (2013).  After careful consideration, it appears that the New Hampshire Supreme Court could plausibly adopt either side's construction.  Rather than choosing between the two constructions, or certifying the question to that court-- both unappealing alternatives--the court instead elects to try the case,[2] giving the parties an opportunity to present evidence as to whether Mellon does, in fact, hold the note.  If Mellon is the note holder, then it will satisfy both parties' definition of the term "mortgagee," and there will be no reason to construe

---

[2]By agreement of the parties, this will be a bench trial.
See Discovery Plan (document no. 32) at 2; Order of Aug. 1, 2013.

that term.  Construction of the statute will become necessary only if Mellon does not hold the note.

## I.  **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.  On cross-motions for summary judgment, the court applies this standard to each party's motion separately.  See, e.g., Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

## II.  **Background**

In August 2005, Mark Galvin executed a promissory note in the amount of $2,900,000, payable to Metrocities Mortgage, LLC.

4

Affixed to the note, on a separate page, is an undated allonge indorsing the note to "JPMorgan Chase Bank, as Trustee."[3]

The note was secured by a mortgage on property in Rye, New Hampshire, belonging to Galvin and his wife Jenny.  Both Galvins executed the mortgage, which identifies defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as the mortgagee in its capacity "as nominee for [Metrocities and its] successors and assigns."  In the mortgage, the Galvins acknowledge that "MERS is a separate corporation" from Metrocities, and agree to "mortgage, grant and convey" the Rye property "to MERS . . . and

---

[3]The Galvins deny that any allonge is attached to the note, but they have not presented any evidence that creates a genuine issue as to the authenticity of the note that the defendants have submitted with their motion, or of the allonge thereto.  The Galvins' denial appears to stem from their belief that, before the court may consider this document, the defendants must submit an affidavit from someone with personal knowledge attesting to its authenticity.  In fact, the Galvins have moved to strike portions of two affidavits the defendants submitted with their summary judgment filings, arguing that the affidavits do not lay a foundation for the affiants' statements that the defendants' note is the "original" note.  As this court has previously held, however, a promissory note "is commercial paper that is self-authenticating under Federal Rule of Evidence 902(9), and need not be independently authenticated," Moore v. Mortg. Elec. Registration Sys., Inc., 2013 DNH 065, at 22-23, at least until the opponent offers evidence contesting the note's admissibility that "would be sufficient to convince a reasonable person that the [note] was not genuine," Miller v. Deutsche Bank Nat'l Trust Co., No. 12-cv-3279, 2013 WL 6028270, at *2 (D. Colo. Nov. 13, 2013) (quoting 31 Charles Alan Wright, et al., Federal Practice & Procedure § 7134 (1st ed. 2000)).  Again, though, the Galvins have not come forward with any such evidence.  Their motions to strike are accordingly denied (although the court does not credit the affiants' statements that the note is the "original" note).

to the successors and assigns of MERS with mortgage covenants,
and with power of sale."  They further express

> understand[ing] and agree[ment] that MERS holds only
> legal title to the interests granted . . . in this
> Security Instrument, but, if necessary to comply with
> law or custom, MERS (as nominee for [Metrocities and
> its] successors and assigns) has the right:  to
> exercise any or all of those interests, including, but
> not limited to, the right to foreclose and sell the
> Property.

Mr. Galvin initially stopped making payments on the note in
mid-2009.  In an effort to cure this default, the Galvins resumed
making monthly payments to their loan servicer, defendant EMC
Mortgage Corporation, later that year.  At some point, however,
the Galvins again stopped making payments, and, in March 2010,
EMC sent them an acceleration warning and notice of intent to
foreclose, asserting that Mr. Galvin had "failed to pay the
required monthly installments commencing with the payment due"
for October 2009 and was nearly $90,000 in arrears.  Not long
thereafter, Harmon Law Offices wrote Mr. Galvin to advise him
that EMC had retained it to foreclose on the mortgage.  Harmon
scheduled a foreclosure auction for June 2010, but this auction
was postponed while the Galvins discussed a loan modification or
forbearance with EMC.

Ultimately, these discussions were not fruitful, and in June
2012, Harmon sent the Galvins another letter informing them that
it had scheduled another foreclosure sale for August 1, 2012, on

6

behalf of defendant Bank of New York Mellon as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2005-AR7 Mortgage Pass-Through Certificates, Series 2006-AR7 ("Mellon"). By an instrument dated May 5, 2010, and recorded in the Rockingham County Registry of Deeds two weeks later, MERS assigned the Galvins' mortgage to Mellon. The assignment recites that Mellon is "successor trustee to JPMorgan Chase Bank, N.A."

Harmon's letter prompted the Galvins to file this action in Rockingham County Superior Court. The defendants removed to this court, see 28 U.S.C. § 1441, and moved to dismiss, see Fed. R. Civ. P. 12(b)(6). In a lengthy order, the court dismissed fourteen of the fifteen counts of the Galvins' original complaint, including their claim that Mellon lacked "standing" to foreclose because, among other things, it did not possess the Galvins' note. See Galvin v. EMC Mortg. Corp., 2013 DNH 053. The Galvins later moved the court to vacate this order and to amend the complaint; the court denied the request to vacate as both untimely and meritless, Order of May 14, 2013, but permitted the Galvins to amend the complaint to assert claims for (as is pertinent here) a declaratory judgment that the defendants may not foreclose and violation of the CPA, Order of June 10, 2013.

Following discovery, the parties filed the cross-motions for summary judgment now pending.[4]

## III.  <u>Analysis</u>

As mentioned at the outset, the Galvins' primary theory of relief in this action is that none of the defendants is entitled to exercise the power of sale included in the mortgage under N.H. Rev. Stat. Ann. § 479:25.  That provision permits "the mortgagee or his assignee" to "give such notices and do all such acts as are authorized or required by the power."  The statute does not define the term "mortgagee," and, as discussed, the Galvins take the position that it means "the entity that . . . owns and holds both the borrower's note and mortgage interests."  First Am.

---

[4]The court's preparation of the foregoing background summary was greatly hampered by the fact that the Galvins, rather than simply presenting facts in their "short and concise statement of material facts," <u>see</u> L.R. 56.1(a) & (b), instead used that statement to make substantive arguments, replete with citations to legal authority.  This is improper and violates the Local Rules, <u>see</u>, <u>e.g.</u>, Young v. Plymouth State Coll., No. 96-cv-75-JD, 1999 WL 813887, *1 n.2 (D.N.H. Sept. 21, 1999), and also resulted in the statement being neither short nor concise.  Were the court to countenance this practice, that would permit the Galvins to circumvent Local Rule 7.1(a)(3)'s page limitations and give them an undue advantage over the defendants, who used their statements of facts in the appropriate manner, i.e., to advance factual propositions based upon the evidence.  So as to level the playing field, the court has considered only those arguments and authorities presented in the Galvins' memorandum of law, and has largely disregarded any arguments and legal authorities presented solely in their statement of facts.  Counsel are advised that in the future, they should attempt to keep their legal argument where it belongs:  in the argument section of their briefs.

Petition (document no. 29) ¶ 85.  The defendants, for their part, say that a "mortgagee" need hold only the mortgage.

Each party, relying upon its construction of the term, asks the court to grant summary judgment in its favor.  The parties' arguments in favor of summary judgment do not, however, depend solely upon their respective views of the law's requirements. The defendants argue that even if the plaintiffs have correctly interpreted § 479:25, Mellon can still foreclose because it holds both the note and mortgage, while the plaintiffs say that even if the defendants are right, Mellon may not foreclose because it does not hold the mortgage.

For the reasons discussed below, the court concludes that the record evidence conclusively demonstrates that Mellon holds the mortgage by assignment, but that there is a genuine issue of material fact as to whether Mellon holds the note.  The court could nonetheless grant summary judgment for the defendants if it were to conclude that their construction of the term "mortgagee" is correct.  Rather than rule on that issue at this point (or invite the New Hampshire Supreme Court to do so), however, the court will wait until such time as a ruling is absolutely necessary, i.e., if a trial on the merits establishes that Mellon does not, in fact, lawfully hold the note.  The parties' motions for summary judgment are accordingly denied.

9

**A.   Mellon's rights in the mortgage**

As already related in Part II, <u>supra</u>, in May 2010, MERS executed an assignment of the Galvins' mortgage to Mellon, and that assignment was recorded in the Registry of Deeds later that month.  According to the Galvins, however, that assignment could not have transferred an interest in the mortgage to Mellon. Their reasons for so believing are somewhat difficult to discern, but appear to be twofold.  The Galvins first point to an internal MERS document, the "Milestone Report," which they interpret as showing that Mellon "did not obtain any interests in the Galvins' mortgage loan (if it ever did) until at least January 19, 2012." Second, the Galvins argue that "MERS had no lawful authority to assign the MERS mortgage under its own Rules" because Metrocities, the originator of their loan, did not have a membership agreement with MERS.  Neither argument is persuasive.

The Milestone Report does not create a genuine issue of material fact as to the existence or validity of MERS' assignment of the mortgage to Mellon.  As an initial matter, the Galvins themselves aver in their statement of facts that MERS does not maintain its own records, but relies upon various other entities–-"[m]ortgage lenders, loan servicers, law firms, title companies, banks, and insurance agencies"–-to do so.  Pls.' Statement of Facts (document no. 44-1) at 6-7 n.3.  As a result,

10

the Galvins note, MERS "makes no representations or warranties regarding [the] accuracy or reliability" of its records.  Id.  So the Milestone Report, which is hearsay that would not seem to fall into any exemption or exception set forth in Federal Rules of Evidence 801, 803, and 804, also does not bear the "circumstantial guarantees of trustworthiness" that would permit its admission into evidence under Rule 807's residual exception. This court may not consider such inadmissible material in ruling on summary judgment motions.  Gómez–González v. Rural Opportunities, Inc., 626 F.3d 654, 666 (1st Cir. 2010).

More to the point, even assuming the Milestone Report is admissible, it is immaterial to Mellon's ownership of the mortgage.  The Galvins also aver that the report reflects "sales, transfers and assignments of the beneficial interests (i.e., the note) in the Galvins' mortgage loan," rather than transfers and assignments of the mortgage itself.  Id. at 7 (emphasis added); see generally id. at 6-9, nn.3-7 (citing cases, including Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355-56 (1st Cir. 2013), for the proposition that MERS tracks assignments of promissory notes).  Because, as discussed in this court's order on the defendants' motion to dismiss, the parties to the mortgage "plainly intended that the mortgage would not follow the note," Galvin, 2013 DNH 053, at 20 (emphasis omitted), the transfer of

11

the note among various entities had no effect on ownership of the mortgage, so a record of such transfers says nothing about which entity held the mortgage at which time.[5]

---

[5]The Galvins assert, incorrectly, that this court vacated its order on the motion to dismiss.  As already mentioned in Part II, supra, though, the court actually denied the Galvins' motion to vacate that order, concluding that it was both untimely and wholly without merit.  See Order of May 14, 2013.

The Galvins also seek to revisit the court's conclusion as to the parties' intent, and have submitted an affidavit from Mr. Galvin in which he claims that he "never had any intention of allowing the interests in the mortgage loan to be taken apart and sold separately," and that his intent was that one entity "would own all the interests in my mortgage loan."  As Judge Learned Hand explained over 100 years ago, however:

> A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties.  A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent.  If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

Hotchkiss v. Nat'l City Bank, 200 F. 287, 293 (S.D.N.Y. 1911), aff'd, 201 F. 664 (2d Cir. 1912), aff'd, 231 U.S. 50 (1913); see C & M Realty Trust v. Wiedenkeller, 133 N.H. 470, 476 (1990) (intent of contracting parties is "determined based on objective standards, rather than on their subjective, unmanifested states of mind").  Mr. Galvin, then, cannot disclaim the unambiguous expression of intent manifested by the fact that he gave the note to Metrocities and the mortgage to MERS, which he expressly acknowledged was "a separate corporation" from Metrocities.  (The court will note only in passing the Galvins' claim, based upon the Milestone Report, that Metrocities "never had anything to do with the Galvins' mortgage loan."  For reasons already noted in the text above, the court cannot rely upon that document. Indeed, its unreliability is only underscored by the fact that it does not identify Metrocities as having ever held the note, even

The Galvins' challenge to the assignment on the grounds that it was made in violation of MERS' internal rules fares no better. It is questionable whether the assignment violated MERS' rules at all.  The Galvins' assertion that MERS could not, consistent with its rules, assign the mortgage in the absence of a membership agreement with Metrocities is accompanied by a single citation to those rules generally.  The Galvins do not cite any specific rule prohibiting MERS from assigning a mortgage if the original lender does not have a membership agreement with it, and this court is neither obliged nor inclined to scour all 14 rules, which span 43 pages of clauses and sub-clauses, in search of such a rule when the Galvins themselves have not seen fit to do so.[6]  See United

though the Galvins themselves have admitted that the note "states on its face that it was *[sic]* payable to Metrocities Mortgage, LLC."  Pls.' Statement of Facts (document no. 44-1) at 1.)

In furtherance of their attempt to revisit the issue of the parties' intent, the Galvins also renew an argument the court has previously rebuffed, see Galvin, 2013 DNH 053, at 21 n.6, and claim that paragraph 20 of the mortgage, stating that "[t]he Note or a partial interest in the Note (together with this security instrument) may be sold one or more times without notice to the Borrower," evinces an intent that the documents be transferred together.  The Court of Appeals itself has rejected this argument, however, observing that "this language is permissive and by no means prohibits the separation of the two instruments," Culhane v. Aurora Loan Servs., 708 F.3d 282, 292 n.6 (1st Cir. 2013).  It therefore gets the Galvins no farther on the second go-round.

[6]In their statement of facts, the Galvins--in the course of advancing a separate legal argument as to the assignment's validity, which the court will not address here, see supra n.4-- do cite several clauses of the rules which, they say, provide

13

States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not
enough merely to mention a possible argument in the most skeletal
way, leaving the court to do counsel's work, create the ossature
for the argument, and put flesh on its bones.").

In any event, even if the rules include such a prohibition,
that is not the type of infirmity the Galvins may rely upon to
invalidate the assignment.  In the previous iteration of their
complaint, the Galvins sought to challenge the validity of the
assignment on other grounds, arguing that the MERS representative
who signed it had a "conflict of interest" that precluded her
from acting on MERS' behalf.  See Galvin, 2013 DNH 053, at 22-23.
In granting the defendants' motion to dismiss that claim, the
court noted that "New Hampshire law recognizes the general rule
that a debtor cannot interpose defects or objections to an
assignment which merely render the assignment voidable at the
election of the assignor or those standing in his shoes."  Id. at
23 (quoting Drouin v. Am. Home Mortg. Servicing, Inc., 2012 DNH
089, at 7) (internal bracketing omitted).  The Court of Appeals,

---

that "MERS can only act at the direction of the note holder or
the note holder's agent" and that a recordable assignment "may be
made only for purposes of deactivating a mortgage loan from the
MERS system."  Pls.' Statement of Facts (document no. 44-1) at 11
& n.8.  The Galvins do not appear to be arguing that these rules
are the same rules that prohibit MERS from assigning the mortgage
in the absence of a membership agreement with Metrocities.  If
they are, in fact, making that argument, it is incorrect.  The
rules they have cited contain no such prohibition.

applying Massachusetts law, has similarly held that "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void," but "does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Culhane, 708 F.3d at 291.

The Galvins' claim that MERS' assignment was ineffective because it was not made in compliance with MERS' internal rules is exactly the type of challenge that would, at most, render the assignment voidable, not void. See Hines v. Wells Fargo Bank, N.A., No. 13-cv-167, 2014 WL 897805, at *5 (S.D. Tex. March 6, 2014) (ruling that plaintiff had no standing to contest MERS' assignment of deed of trust under MERS' internal rules because any violations of rules would render assignment "voidable, not void, and immune from challenge by a mere obligor"). A claim that a corporate party has violated its own internal procedures in the course of executing an assignment of its rights amounts to nothing more than a claim that the corporate officer who executed the assignment has exceeded the scope of his or her authority. As both this court and the Court of Appeals have noted, that type of claim merely renders an assignment voidable at the election of the assignor. See Drouin, 2012 DNH 089, at 7 n.1 (citing Woodstock Soapstone, Co. v. Carleton, 133 N.H. 809, 817 (1991));

15

see also Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 10 (1st Cir. 2014) (applying Massachusetts law).  And MERS, the assignor, has not renounced the assignment; to the contrary, as a defendant in this action, MERS has affirmatively sanctioned it.

The Galvins suggest that they may nonetheless challenge the assignment here because they are "in direct contractual privity with MERS (and/or third party beneficiaries thereof)."  Yet "contractual privity" has no legal significance in this context: a mortgagor and mortgagee are always in privity with one another, but a mortgagor still cannot challenge an assignment for reasons that would merely render it voidable, as just discussed.  As for the Galvins' assertion that they are "third-party beneficiaries," that claim requires a showing that some contract either "calls for a performance by the promisor, which will satisfy some obligation owed by the promisee to the third party," or "is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract."  Brooks v. Trs. of Dartmouth Coll., 161 N.H. 685, 697 (2011).  The Galvins have not even identified the contract they say confers third-party beneficiary status on them--whether they rely on the MERS rules, membership agreements, or some other "contract" is left ambiguous

16

by their memorandum and statement of facts--let alone any language in that contract that could confer such status.

For the foregoing reasons, the court concludes that there is no genuine issue of material fact as to Mellon's possession of their mortgage by virtue of a recorded assignment from the original mortgagee, MERS.

### B.   Mellon's rights in the note

The defendants have proffered a version of the note which they maintain is the original.  As discussed in Part II, supra, the defendants' version includes, on a separate page, an undated allonge specially indorsing the note--originally payable to Metrocities--to "JPMorgan Chase Bank, NA, as Trustee."  Mellon, the defendants say, is entitled to enforce the note because it is the "successor Trustee" to JPMorgan.  The Galvins have not proffered an alternative version of the note that, in their view, is the original; they instead question both the validity of the allonge and the evidentiary support for the defendants' assertion that Mellon is JPMorgan's successor.  While the Galvins' challenges to the validity of the allonge fall flat, the court agrees that the defendants have not, at this stage, presented conclusive evidence in support of their position that Mellon is the successor trustee to JPMorgan.

Before proceeding to the merits of the parties' arguments, a brief detour to explain the governing law is warranted.  As this court has previously noted, a promissory note "is a negotiable instrument subject to the provisions of Article 3 of the Uniform Commercial Code ('UCC')."[7]  LeDoux v. JP Morgan Chase, N.A., 2012 DNH 194, at 11.  Under the UCC, the holder of an instrument may enforce it.  N.H. Rev. Stat. Ann. § 382-A:3-301.  "A holder is a person who is in possession of an instrument drawn, issued, or indorsed to him or to his order."  Ledoux, 2012 DNH 194, at 11-12 (quoting Kenerson v. FDIC, 44 F.3d 19, 24 (1st Cir. 1995)).  At the outset of the loan, then, Metrocities was the holder of the note.  The "allonge, as a paper affixed to the note bearing the signature of a [Metrocities] representative, would--if valid-- serve to indorse the note to [JPMorgan as Trustee], making it the holder."  Id. (citing N.H. Rev. Stat. Ann. §§ 382-A:3-204(a), 382-A:3-205(a); Kenerson, 44 F.3d at 24).  And if, as the defendants claim, Mellon is JPMorgan's successor as Trustee, then Mellon would qualify as the holder under the UCC.  See N.H. Rev. Stat. Ann. § 382-A:3-110(c)(2)(i) ("If an instrument is payable

---

[7]In their memorandum, the Galvins "[a]ssum[e], without agreeing" that a note is a negotiable instrument.  Yet the note would appear to meet the definition set forth in N.H. Rev. Stat. Ann. § 382-A:3-104(a), and the Galvins have not seen fit to offer any explanation for their disagreement with that proposition.  So the court sees no reason to doubt that the Galvins' note is a negotiable instrument governed by Article 3 of the UCC.

to . . . a trust, an estate, or a person described as trustee or
representative of a trust or estate, the instrument is payable to
the trustee, the representative, <u>or a successor of either</u>.")
(emphasis added).

With that background in mind, the court turns its attention
to the Galvins' challenges to the allonge's validity, which, like
their challenges to the assignment of the mortgage, are two in
number.  The Galvins first point out that the allonge is on a
separate page from the rest of the note.  Relying upon <u>West's
Encyclopedia of American Law</u> (2d ed. 2008), they contend that an
allonge is only "necessary when there is insufficient space on
the document itself for the endorsements *[sic]*."  Because there
is "plenty of room on the signature page for an endorsement
*[sic]*," the Galvins assert that "no 'allonge' was or is necessary
and the existence of same calls the validity of the 'JPMorgan
Chase Bank as Trustee' endorsement *[sic]* into question."

This argument stumbles out of the gate.  Whatever weight
<u>West's</u> may carry in some circles, it does not accurately relate
the present state of New Hampshire law insofar as it suggests
that, in the absence of insufficient space on the note itself, an
indorsement may not appear on a separate page affixed to the
note.  The UCC provides, with no provisos or qualifications,
that, "[f]or the purpose of determining whether a signature is

19

made on an instrument, a paper affixed to the instrument is a part of the instrument." N.H. Rev. Stat. Ann. § 382-A:3-204(a). The official comment explains that the purpose of this provision is to make clear that "[a]n indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement." Id., Off. Cmt.  So whether or not there was "plenty of room on the signature page" of the note for an indorsement is irrelevant to both the allonge's necessity and its validity.  See Wells Fargo Bank, N.A. v. Heath, 280 P.3d 328, 333 n.11 (Okla. 2012) (under the UCC, "it is no longer necessary that an instrument be so covered with previous indorsements that additional space is required before an allonge may be used"); Thomas v. Wells Fargo Bank, N.A., 116 So.3d 226, 230 n.5 (Ala. Civ. App. 2012) (same).

The Galvins also argue that the indorsement on the allonge is insufficient to negotiate the note.  They rely upon N.H. Rev. Stat. Ann. § 382-A:3-302(a)(1), which specifies that, for a party to be considered a "holder in due course" of an instrument, "the instrument when issued or negotiated to the holder [must] not bear such apparent evidence of forgery or alteration or [must] not otherwise [be] so irregular or incomplete as to call into question its authenticity."  In the Galvins' view, the absence of a date on the allonge, and the failure to specify the trust for

20

which JPMorgan was serving as Trustee, "is exactly the kind of 'irregularity' or 'incompleteness' that destroys 'holder' status of the note."  Neither of these omissions has any effect on the validity or efficacy of the allonge.

New Hampshire law does not require an indorsement to be dated, see Moore, 2013 DNH 065, at 23 (citing Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 93 n.10 (D.N.H. 1998)), so the fact that the allonge is undated does not render it "irregular or incomplete."  And while it undoubtedly would have been preferable to specify the trust on behalf of which JPMorgan was acting when the note was indorsed, the failure to do so does not in any way suggest that the note and allonge are not what they purport to be.  See N.H. Rev. Stat. Ann. § 382-A:3-302, Off. Cmt. ("[T]he irregularity or incompleteness must indicate that the instrument may not be what it purports to be."); cf. Triffin v. Somerset Valley Bank, 777 A.2d 993, 1000 (N.J. Super. App. Div. 2001) (for § 3-302 of Uniform Commercial Code to preclude enforcement, "it must be apparent on the face of the instrument that it is fraudulent").  Although the Galvins rely upon In re David A. Simpson, P.C., 711 S.E.2d 165 (N.C. App. 2011), in support of their position, that case does not even cite, much less discuss, the requirements of § 3-302(a)(1) of the Uniform Commercial Code. As a matter of fact, that case recognized that when a note is

21

indorsed to a party in its capacity "as Trustee," but the
indorsement does not specify a particular trust, that merely
raises a factual question as to the identity of the entity to
which the note was indorsed, rather than calling into question
the authenticity of the note or indorsement. Id. at 172-73.

That holding segues nicely into the Galvins' argument that
the defendants lack evidentiary support for their claim that
Mellon is JPMorgan's "successor Trustee"––an argument which, as
alluded to earlier, has considerably more to recommend it than
the Galvins' other challenges to Mellon's ability to enforce the
note. As explained previously, if Mellon is in fact JPMorgan's
successor as Trustee, it is considered a holder entitled to
enforce the note under the UCC. See N.H. Rev. Stat. Ann. § 382-
A:3-110(c)(2)(i). The sole piece of evidence the defendants have
proffered in support of their claim that Mellon is JPMorgan's
successor, however, is an "Assignment and Assumption Agreement"
in which JPMorgan and various related entities agree to "sell,
assign, transfer, convey, and deliver" their "right, title and
interest" in various contracts to "The Bank of New York." This
agreement provides insufficient support for the defendants'
"successor trustee" theory.

In fact, there are multiple problems with the defendants'
reliance on the "Assignment and Assumption Agreement." The

22

Galvins astutely point out that the agreement is unauthenticated, preventing the court from considering it when ruling on the parties' motions.  See, e.g., Gómez–González, 626 F.3d at 666 ("unauthenticated, unsworn document" could not be relied upon at summary judgment).  Even if it were authenticated, the agreement makes no reference to the trust for which Mellon currently serves as trustee, Structured Asset Mortgage Investments II Trust 2005-AR7 (the "SAMI II Trust"), and therefore provides no support for the proposition that Mellon is JPMorgan's successor as trustee for that trust.  Perhaps even more fundamentally, the defendants have not provided any evidence that "The Bank of New York," JPMorgan's counterparty to the agreement, is the same entity as Mellon.[8]  And, all these problems with the agreement itself aside, the defendants have provided no evidence on the most critical issue:  whether the indorsement of the note to "JPMorgan Chase Bank, NA, as Trustee" was to "JPMorgan Chase Bank, NA, as Trustee for the SAMI II Trust," or to "JPMorgan Chase Bank, NA, as Trustee" for some other trust.

Based upon the summary judgment record, then, the court is unable to conclude that Mellon is the "holder" of the Galvins'

---

[8]The assignment of the Galvins' mortgage states that Mellon was "formerly known as The Bank of New York," but the court is not prepared to rely on the assignment, the purpose of which is merely to document the transfer of an interest in real property, as an accurate statement as to Mellon's pedigree.

note within the meaning of the UCC, with the attendant right to enforce it.  By the same token, though, the court also cannot conclude that Mellon is <u>not</u> the holder of the note.  The Galvins have not presented any evidence that establishes, for example, that the indorsement was made to JPMorgan in its capacity as trustee for a trust other than the SAMI II Trust, or that, contrary to the defendants' representations, Mellon is not JPMorgan's successor as trustee for that trust.  Thus, on the current record, there is a genuine dispute as to the meaning of the indorsement, and, hence, as to whether Mellon is the current holder of the Galvins' note.[9]

### C.   N.H. Rev. Stat. Ann. § 479:25

Having undertaken the foregoing analysis and determined that Mellon is the holder of the Galvins' mortgage, but that its status as holder of the associated note is uncertain, the court must now consider whether, that uncertainty notwithstanding, Mellon may lawfully foreclose under N.H. Rev. Stat. Ann. §

---

[9]The court must express some wonderment that the defendants have not been able to clarify the indorsement, since JPMorgan is itself a defendant in this action.  Given JPMorgan's status as a defendant, it is equally perplexing that JPMorgan, which contends that Mellon has the right to enforce the note, has not simply indorsed the note to Mellon's order (or in blank), rendering the ambiguity in the present indorsement a mere curiosity.  The court need not ruminate further on these matters at present, but the defendants will have to reckon with them at trial.

479:25.  Section 479:25, as has already been mentioned, permits
"the mortgagee or his assignee" to "give such notices and do all
such acts as are authorized or required" by the power to
foreclose by sale, and the parties take different views of what
the term "mortgagee" means.  The Galvins say that a "mortgagee"
must hold both the mortgage and associated promissory note.  The
defendants rely on the analysis set forth in this court's order
on their motion to dismiss, see Galvin, 2013 DNH 053, and say
possession of the mortgage alone is enough.

In its previous order, the court held that possession of the
note was not a necessary prerequisite to foreclosure where, as
here, the note and mortgage were held by separate entities at the
outset of the transaction and the borrower expressly agreed that
the holder of the mortgage and its successors could foreclose.
Id. at 17-21.  Given that holding, the defendants' reliance on
the order is understandable.  That order is, however, of limited
utility here.  Because none of the parties advanced any argument
based upon § 479:25's language to the court, the court based its
holding on New Hampshire's common law, and not on the statute's
language.  Neither the order on the motion to dismiss, nor any
case law either cited by the parties or found by this court, has
squarely addressed whether, common law aside, § 479:25
independently requires a foreclosing party to possess both the

25

mortgage and the associated promissory note.  And, for better or worse, this opinion will not resolve that issue, either.

When compelled to address an issue of state law that has not been conclusively resolved by the state's highest court, a federal court must "make an informed prophecy of what the state's highest court would do in the same situation, seeking guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations." Bartlett, 731 F. Supp. 2d at 154-55 (quoting Walton v. Nalco Chem. Co., 272 F.3d 13, 20 (1st Cir. 2001)). Because this issue is one of statutory interpretation, moreover, the court "begin[s] by examining the language of the statute." State v. Farrington, 161 N.H. 440, 445-46 (2011).

In interpreting statutory language, New Hampshire courts "ascribe the plain and ordinary meaning to the words used." Id. at 446; see also N.H. Rev. Stat. Ann. § 21:2 ("Words and phrases shall be construed according to the common and approved usage of the language.").  "[T]echnical words and phrases," however, "and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning." Id.

There is a good argument to be made that both the "plain and ordinary" and "peculiar and appropriate" meanings of the term

"mortgagee" refer simply to the party that holds the mortgage, rather than the associated note.  In 1899, at the time of the enactment of the original version of § 479:25--which likewise employed the term "mortgagee," see 1899 N.H. Laws 257-58 (permitting "the mortgagee or person having his estate in the premises, or any person authorized by the power of sale" to exercise the power)--both legal and lay dictionaries generally defined a "mortgagee" as, simply, the party to whom a mortgage was given, with "mortgage" itself being defined solely by reference to the security given for a debt, rather than the debt itself.  See J. Kendrick Kinney, A Law Dictionary and Glossary 469 (1893); Joseph Worcester, A Universal and Critical Dictionary of the English Language 467 (1881); Noah Webster, An American Dictionary of the English Language 860 (1874).  As discussed in this court's order on the motion to dismiss, moreover, at common law the mortgage and note could be separated from one another and held by different entities.  See Galvin, 2013 DNH 053, at 18-21. At common law, as a matter of fact, the note and mortgage could be in different hands from the outset of the transaction.  See Thurston v. Kennett, 22 N.H. 151 (1850) (note given to an estate and mortgage given to a separate party in his capacity as the representative of the estate).  Possession of the note, then, would not have been necessarily implicit in the term "mortgagee."

27

That, however, is not the alpha and omega of this court's inquiry.  The New Hampshire Supreme Court has repeatedly warned against "mak[ing] a fortress out of a dictionary," Clare v. Town of Hudson, 160 N.H. 378, 384 (2010), and has instructed that the words of a statute must be interpreted "in the context of the overall statutory scheme and not in isolation," Farrington, 161 N.H. at 446.[10]  The Galvins point out that other provisions of New Hampshire law relating to mortgages seem to presuppose that a "mortgagee" holds the note, by making reference to the receipt of loan payments by the mortgagee.  See, e.g., N.H. Rev. Stat. Ann. § 477:29, II (making reference to mortgagor "pay[ing] unto the mortgagee . . . the principal and interest secured by the mortgage"); id. § 479:7-a, I(d) (referring to "the mortgagee receiv[ing] payment of the loan").  From these provisions, it might be inferred that a "mortgagee" must hold both the mortgage and note, since "[a]ll statutes dealing with the same subject-matter are to be considered in interpreting any one of them."  In re Liquidation of Home Ins. Co., 89 A.3d 165, 170 (N.H. 2014).

---

[10]This interpretive principle has an august ancestry.  Over 2300 years ago, the Confucian philosopher Mencius advised that "those who explain the odes, may not insist on one term so as to do violence to a sentence, nor on a sentence so as to do violence to the general scope.  They must try with their thoughts to meet that scope, and then we shall apprehend it."  See 1 Terrien de Lacouperie, The Oldest Book of the Chinese, the Yh-king, and Its Authors 62 (1892).  Sage advice, from an actual sage.

28

That inference also encounters a potential stumbling block, though.  While this court generally disfavors exploration of so-called "legislative intent," see, e.g., Dennis v. Town of Loudon, 2012 DNH 165, at 26-27 n.11, the New Hampshire Supreme Court's goal has traditionally been "to apply statutes in light of the legislature's intent in enacting them."  N.H. Ass'n of Cnties. v. Comm'r, N.H. Dep't of Health & Human Servs., 156 N.H. 10, 15 (2007).  The statutory provisions supporting the plaintiffs' construction of the term "mortgagee" were enacted decades after the original version of § 479:25.  Those provisions thus provide little insight into the New Hampshire General Court's "intent in enacting" § 479:25 and the meaning of the terms in that statutory section.[11]  Cf. Crowell v. Clough, 23 N.H. 207 (1851) (commenting on lack of clarity and cohesion introduced when "different statutes" are "passed from time to time on the same subject").

An examination of the statutory language and scheme, then, does not illuminate the meaning of "mortgagee."  The Galvins try to resolve this problem by appealing to practical considerations.

---

[11]Indeed, a leading treatise on statutory construction, upon which the New Hampshire Supreme Court "frequently relies," Conservation Law Found. v. Pub. Serv. Co. of N.H., 2013 DNH 167, at 12 n.5, recognizes that "[t]wo statutory provisions containing similar or identical language are not necessarily subject to the same interpretation, as there are other interpretive factors such as the purpose and context of the legislation, and legislative history."  2A N.J. Singer & J.D. Singer, Sutherland Statutory Construction, § 46:5, at 224 (7th ed. 2007).

Citing Cadle Co. v. Dejadon, 153 N.H. 376 (2006), they argue that
because a foreclosing entity "retains the right to sue the
defaulting mortgagor for any deficiency due after a foreclosure
sale," a mortgagor could be subjected to competing claims by that
entity and the noteholder if § 479:25 is not interpreted to
require the foreclosing entity to hold the note.  The premise of
this argument, however, is incorrect.  The Cadle Co. case did not
hold, or even suggest, that the entity prosecuting a foreclosure
sale may bring a post-sale deficiency action to recover the
unpaid balance on the note.  Rather, the case merely reiterated
the rule, long recognized in New Hampshire law, that an action
may be brought on the note after foreclosure.  Although the Cadle
Co. court used the term "mortgagee" to refer to the party that
could bring such an action, its use of the term seems merely to
have reflected the fact that in the case before it (and in the
cases upon which it relied), the holder of the mortgage and the
holder of the note were the same entity.  So, contrary to the
Galvins' argument, the New Hampshire Supreme Court has never
expressly countenanced post-foreclosure deficiency claims from a
mortgage holder who was not also the note-holder.

        The Galvins also rely upon Eaton v. Fed. Nat'l Mortg. Ass'n,
462 Mass. 569 (2012), a recent decision of the Massachusetts
Supreme Judicial Court in which that court, interpreting the

Commonwealth's analogous statute, held that the term "mortgagee" refers to the holder of both the mortgage and the note.  That decision, however, does not assist the court in determining how the New Hampshire Supreme Court would rule here, since the New Hampshire Supreme Court has held that extrajurisdictional cases, including Massachusetts cases, "offer little guidance in construing our own statutory foreclosure scheme" because of the idiosyncrasies of "each state's statutory scheme."  Wells Fargo Bank v. Schultz, 164 N.H. 608, 611 (2013) (citing Eaton for the proposition that "[s]tatutes play an especially significant role in connection with mortgage foreclosures effected under a power of sale").  The Galvins have not tried to explain, and the court does not see, how the differences between Massachusetts' and New Hampshire's respective statutes are inconsequential when it comes to the present issue of statutory interpretation.

So the various indicators of the meaning of "mortgagee," both intrinsic and extrinsic, do not point to a single, clear answer.  The interpretive problem, while intractable, is, to be sure, not insoluble, and "a federal court sitting in diversity should not simply throw up its hands" when confronted with a difficult question of state law.  Butler v. Balolia, 736 F.3d 609, 612-13 (1st Cir. 2013).  At the same time, though, "prudence strongly suggests" that federal courts confronted with important

31

questions of state law on which there is "no clear guidance" from the state's highest court "should not rush to answer [those questions] unnecessarily." Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 255 (1st Cir. 2013).  In such situations, the better course "is to certify the question to that court better suited to address the issue." Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012).

Certification, however, is itself disfavored if it would not be dispositive of the case. Ruiz-Sánchez, 717 F.3d at 255-56. That is potentially the situation here:  even if the New Hampshire Supreme Court holds that the Galvins are correct and that Mellon must demonstrate that it possesses the note in order to lawfully foreclose under § 479:25, that would not dispose of this case, since there is a trialworthy issue as to Mellon's possession of the note.  Certification, then, is not the answer-- yet.  Instead, the case will proceed to trial, where the parties will have the opportunity to present their evidence as to whether Mellon is or is not in lawful possession of the note.  If, and only if, the court determines that Mellon does not hold the note, will it become necessary to rule on the interpretation of

§ 479:25.  The parties' motions for summary judgment are, accordingly, denied.[12]

## IV.  **Conclusion**

For the reasons set forth above, the parties' respective motions for summary judgment[13] are DENIED, as are the plaintiffs' motions to strike.[14]

---

[12]Two final asides:  first, the court recognizes that both sides have advanced several arguments, unrelated to the issues discussed in this order, as to why summary judgment should be granted in their favor on the Galvins' CPA claim.  In view of the close relationship between the Galvins' declaratory judgment and CPA claims, it is not worthwhile to address those arguments now. The parties are free to renew them at trial.

Second, this court's Order of February 14, 2014 permitted the Galvins to deviate from Local Rule 7.1(a)(1) by combining an objection to the defendants' motion for summary judgment and their own motion in one filing.  It did not sanction any further deviation from that rule, which prohibits "combin[ing] multiple motions seeking separate and distinct relief into a single filing."  The court presumes that the Galvins are familiar with this rule, having been rebuked for their failure to comply with it on a prior occasion.  See Order of May 14, 2013.  For unknown reasons, though, they have again violated the rule by requesting not only that summary judgment be granted in their favor, but also that the court grant leave to amend the complaint to add new claims.  Their counsel are advised that further noncompliance with the Local Rules may result in unfavorable consequences.  See L.R. 1.3(a), 83.2(b).  The Galvins' request for leave to amend the complaint comes well after the September 6, 2013 deadline for amendment of pleadings, see Order of August 1, 2013, and is therefore denied, no "good cause" having been shown, see Fed. R. Civ. P. 16(b)(4).

[13]Documents nos. 43, 44.

[14]Documents nos. 45, 48.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 18, 2014

cc:  Jamie Ranney, Esq.
     Paul J. Alfano, Esq.
     Peter G. Callaghan, Esq.