UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Mark B. Galvin and Jenny Galvin</u>

      v.                          Civil No. 12-cv-320-JL
                                   Opinion No. 2014 DNH 139
<u>EMC Mortgage Corporation et al.</u>

**<u>CORRECTED MEMORANDUM ORDER</u>**

This case poses a question of statutory interpretation: what
is the meaning of the term "mortgagee" in N.H. Rev. Stat. Ann.
§ 479:25, which allows "the mortgagee or his assignee" to conduct
a foreclosure under the power of sale?  Plaintiffs Mark and Jenny
Galvin argue that "mortgagee" means the entity that "owns and
holds both the borrower's note and mortgage interests."  First
Am. Petition (document no. 29) ¶ 85.  They assert that none of
the defendants--various entities who, at various times, held or
claimed to hold (or claimed to represent the holder of) their
mortgage and/or associated promissory note--is capable of showing
that it presently holds either document, and accordingly seek an
order enjoining any of them from foreclosing.  The defendants,
for their part, argue that a "mortgagee" is, simply, a party that
holds the mortgage, and assert that, in any event, defendant Bank
of New York Mellon ("Mellon"), in its capacity as Trustee for the
holders of shares in a pool of securitized mortgages, holds both
the mortgage and the note.

This court has jurisdiction over this matter under 28 U.S.C. § 1332 (diversity) because the Galvins are citizens of New Hampshire, the defendants are citizens of other states, and the amount in controversy exceeds $75,000.[1]  The defendants have moved, and the Galvins have cross-moved, for summary judgment on the Galvins' claim to enjoin foreclosure and their accompanying claim under the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A.  Both motions are denied.

The evidence reveals that Mellon does, in fact, hold the Galvins' mortgage, by virtue of an assignment from the original mortgagee.  The court cannot, however, conclude that Mellon also holds the note which that mortgage secures.  The defendants have proffered a version of the note indorsed to "JPMorgan Chase Bank, as Trustee."  They claim that this indorsement transferred the note to JPMorgan Chase Bank in its capacity as Trustee for the selfsame trust for which Mellon now serves as Trustee.  If the defendants' claim is true, this would permit Mellon to enforce the note, as discussed in more detail infra.  The defendants have not presented admissible evidence substantiating their claim,

---

[1]The court also has jurisdiction under 28 U.S.C. § 1331 (federal question) and 1367 (supplemental jurisdiction) by dint of the Galvins' claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.  The Galvins have stated an intent to abandon that claim, so this order makes no further mention of it.

however; nor have the Galvins presented any evidence that conclusively contradicts it.  So, on the current record, there is a genuine dispute of fact as to whether Mellon holds the note.

If the court is to grant summary judgment, then, it can only do so by adopting the defendants' construction of the statutory term "mortgagee," which would not require possession of the note to foreclose.  The New Hampshire Supreme Court has not yet had occasion to address the meaning of that term.  When confronted with such a state of affairs, this court must "make an informed prophecy of what [that] court would do in the same situation." Bartlett v. Mut. Pharm. Co., Inc., 731 F. Supp. 2d 135, 154-55 (D.N.H. 2010), aff'd, 678 F.3d 30 (1st Cir. 2012), rev'd on other grounds, 133 S. Ct. 2466 (2013).  After careful consideration, it appears that the New Hampshire Supreme Court could plausibly adopt either side's construction.  Rather than choosing between the two constructions, or certifying the question to that court--both unappealing alternatives--the court instead elects to try the case,[2] giving the parties an opportunity to present evidence as to whether Mellon does, in fact, hold the note.  If Mellon is the note holder, then it will satisfy both parties' definition of the term "mortgagee," and there will be no reason to construe

---

[2]By agreement of the parties, this will be a bench trial. See Discovery Plan (document no. 32) at 2; Order of Aug. 1, 2013.

3

that term.  Construction of the statute will become necessary only if Mellon does not hold the note.

## I.  <u>Applicable legal standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  <u>See</u> Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.  On cross-motions for summary judgment, the court applies this standard to each party's motion separately.  <u>See</u>, e.g., Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

## II.  <u>Background</u>

In August 2005, Mark Galvin executed a promissory note in the amount of $2,900,000, payable to Metrocities Mortgage, LLC.

4

Affixed to the note, on a separate page, is an undated allonge indorsing the note to "JPMorgan Chase Bank, as Trustee."[3]

The note was secured by a mortgage on property in Rye, New Hampshire, belonging to Galvin and his wife Jenny.  Both Galvins executed the mortgage, which identifies defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as the mortgagee in its capacity "as nominee for [Metrocities and its] successors and assigns."  In the mortgage, the Galvins acknowledge that "MERS is a separate corporation" from Metrocities, and agree to "mortgage, grant and convey" the Rye property "to MERS . . . and

---

[3]The Galvins deny that any allonge is attached to the note, but they have not presented any evidence that creates a genuine issue as to the authenticity of the note that the defendants have submitted with their motion, or of the allonge thereto.  The Galvins' denial appears to stem from their belief that, before the court may consider this document, the defendants must submit an affidavit from someone with personal knowledge attesting to its authenticity.  In fact, the Galvins have moved to strike portions of two affidavits the defendants submitted with their summary judgment filings, arguing that the affidavits do not lay a foundation for the affiants' statements that the defendants' note is the "original" note.  As this court has previously held, however, a promissory note "is commercial paper that is self-authenticating under Federal Rule of Evidence 902(9), and need not be independently authenticated," Moore v. Mortg. Elec. Registration Sys., Inc., 2013 DNH 065, at 22-23, at least until the opponent offers evidence contesting the note's admissibility that "would be sufficient to convince a reasonable person that the [note] was not genuine," Miller v. Deutsche Bank Nat'l Trust Co., No. 12-cv-3279, 2013 WL 6028270, at *2 (D. Colo. Nov. 13, 2013) (quoting 31 Charles Alan Wright, et al., Federal Practice & Procedure § 7134 (1st ed. 2000)).  Again, though, the Galvins have not come forward with any such evidence.  Their motions to strike are accordingly denied (although the court does not credit the affiants' statements that the note is the "original" note).

to the successors and assigns of MERS with mortgage covenants,
and with power of sale."  They further express

> understand[ing] and agree[ment] that MERS holds only
> legal title to the interests granted . . . in this
> Security Instrument, but, if necessary to comply with
> law or custom, MERS (as nominee for [Metrocities and
> its] successors and assigns) has the right:  to
> exercise any or all of those interests, including, but
> not limited to, the right to foreclose and sell the
> Property.

Mr. Galvin initially stopped making payments on the note in
mid-2009.  In an effort to cure this default, the Galvins resumed
making monthly payments to their loan servicer, defendant EMC
Mortgage Corporation, later that year.  At some point, however,
the Galvins again stopped making payments, and, in March 2010,
EMC sent them an acceleration warning and notice of intent to
foreclose, asserting that Mr. Galvin had "failed to pay the
required monthly installments commencing with the payment due"
for October 2009 and was nearly $90,000 in arrears.  Not long
thereafter, Harmon Law Offices wrote Mr. Galvin to advise him
that EMC had retained it to foreclose on the mortgage.  Harmon
scheduled a foreclosure auction for June 2010, but this auction
was postponed while the Galvins discussed a loan modification or
forbearance with EMC.

Ultimately, these discussions were not fruitful, and in June
2012, Harmon sent the Galvins another letter informing them that
it had scheduled another foreclosure sale for August 1, 2012, on

behalf of defendant Bank of New York Mellon as Trustee for the
Certificateholders of Structured Asset Mortgage Investments II
Trust 2005-AR7 Mortgage Pass-Through Certificates, Series 2006-
AR7 ("Mellon").  By an instrument dated May 5, 2010, and recorded
in the Rockingham County Registry of Deeds two weeks later, MERS
assigned the Galvins' mortgage to Mellon.  The assignment recites
that Mellon is "successor trustee to JPMorgan Chase Bank, N.A."

Harmon's letter prompted the Galvins to file this action in
Rockingham County Superior Court.  The defendants removed to this
court, see 28 U.S.C. § 1441, and moved to dismiss, see Fed. R.
Civ. P. 12(b)(6).  In a lengthy order, the court dismissed
fourteen of the fifteen counts of the Galvins' original
complaint, including their claim that Mellon lacked "standing" to
foreclose because, among other things, it did not possess the
Galvins' note.  See Galvin v. EMC Mortg. Corp., 2013 DNH 053.
The Galvins later moved the court to vacate this order and to
amend the complaint; the court denied the request to vacate as
both untimely and meritless, Order of May 14, 2013, but permitted
the Galvins to amend the complaint to assert claims for (as is
pertinent here) a declaratory judgment that the defendants may
not foreclose and violation of the CPA, Order of June 10, 2013.

Following discovery, the parties filed the cross-motions for
summary judgment now pending.[4]

## III.  **Analysis**

As mentioned at the outset, the Galvins' primary theory of
relief in this action is that none of the defendants is entitled
to exercise the power of sale included in the mortgage under N.H.
Rev. Stat. Ann. § 479:25.  That provision permits "the mortgagee
or his assignee" to "give such notices and do all such acts as
are authorized or required by the power."  The statute does not
define the term "mortgagee," and, as discussed, the Galvins take
the position that it means "the entity that . . . owns and holds
both the borrower's note and mortgage interests."  First Am.

---

[4]The court's preparation of the foregoing background summary
was greatly hampered by the fact that the Galvins, rather than
simply presenting facts in their "short and concise statement of
material facts," see L.R. 56.1(a) & (b), instead used that
statement to make substantive arguments, replete with citations
to legal authority.  This is improper and violates the Local
Rules, see, e.g., Young v. Plymouth State Coll., No. 96-cv-75-JD,
1999 WL 813887, *1 n.2 (D.N.H. Sept. 21, 1999), and also resulted
in the statement being neither short nor concise.  Were the court
to countenance this practice, that would permit the Galvins to
circumvent Local Rule 7.1(a)(3)'s page limitations and give them
an undue advantage over the defendants, who used their statements
of facts in the appropriate manner, i.e., to advance factual
propositions based upon the evidence.  So as to level the playing
field, the court has considered only those arguments and
authorities presented in the Galvins' memorandum of law, and has
largely disregarded any arguments and legal authorities presented
solely in their statement of facts.  Counsel are advised that in
the future, they should attempt to keep their legal argument
where it belongs:  in the argument section of their briefs.

Petition (document no. 29) ¶ 85.  The defendants, for their part,
say that a "mortgagee" need hold only the mortgage.

Each party, relying upon its construction of the term, asks
the court to grant summary judgment in its favor.  The parties'
arguments in favor of summary judgment do not, however, depend
solely upon their respective views of the law's requirements.
The defendants argue that even if the plaintiffs have correctly
interpreted § 479:25, Mellon can still foreclose because it holds
both the note and mortgage, while the plaintiffs say that even if
the defendants are right, Mellon may not foreclose because it
does not hold the mortgage.

For the reasons discussed below, the court concludes that
the record evidence conclusively demonstrates that Mellon holds
the mortgage by assignment, but that there is a genuine issue of
material fact as to whether Mellon holds the note.  The court
could nonetheless grant summary judgment for the defendants if it
were to conclude that their construction of the term "mortgagee"
is correct.  Rather than rule on that issue at this point (or
invite the New Hampshire Supreme Court to do so), however, the
court will wait until such time as a ruling is absolutely
necessary, i.e., if a trial on the merits establishes that Mellon
does not, in fact, lawfully hold the note.  The parties' motions
for summary judgment are accordingly denied.

**A.    Mellon's rights in the mortgage**

As already related in Part II, <u>supra</u>, in May 2010, MERS
executed an assignment of the Galvins' mortgage to Mellon, and
that assignment was recorded in the Registry of Deeds later that
month.  According to the Galvins, however, that assignment could
not have transferred an interest in the mortgage to Mellon.
Their reasons for so believing are somewhat difficult to discern,
but appear to be twofold.  The Galvins first point to an internal
MERS document, the "Milestone Report," which they interpret as
showing that Mellon "did not obtain any interests in the Galvins'
mortgage loan (if it ever did) until at least January 19, 2012."
Second, the Galvins argue that "MERS had no lawful authority to
assign the MERS mortgage under its own Rules" because
Metrocities, the originator of their loan, did not have a
membership agreement with MERS.  Neither argument is persuasive.

The Milestone Report does not create a genuine issue of
material fact as to the existence or validity of MERS' assignment
of the mortgage to Mellon.  As an initial matter, the Galvins
themselves aver in their statement of facts that MERS does not
maintain its own records, but relies upon various other
entities--"[m]ortgage lenders, loan servicers, law firms, title
companies, banks, and insurance agencies"--to do so.  Pls.'
Statement of Facts (document no. 44-1) at 6-7 n.3.  As a result,

the Galvins note, MERS "makes no representations or warranties regarding [the] accuracy or reliability" of its records.  Id.  So the Milestone Report, which is hearsay that would not seem to fall into any exemption or exception set forth in Federal Rules of Evidence 801, 803, and 804, also does not bear the "circumstantial guarantees of trustworthiness" that would permit its admission into evidence under Rule 807's residual exception.  This court may not consider such inadmissible material in ruling on summary judgment motions.  Gómez–González v. Rural Opportunities, Inc., 626 F.3d 654, 666 (1st Cir. 2010).

More to the point, even assuming the Milestone Report is admissible, it is immaterial to Mellon's ownership of the mortgage.  The Galvins also aver that the report reflects "sales, transfers and assignments of the beneficial interests (i.e., the note) in the Galvins' mortgage loan," rather than transfers and assignments of the mortgage itself.  Id. at 7 (emphasis added); see generally id. at 6-9, nn.3-7 (citing cases, including Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355-56 (1st Cir. 2013), for the proposition that MERS tracks assignments of promissory notes).  Because, as discussed in this court's order on the defendants' motion to dismiss, the parties to the mortgage "plainly intended that the mortgage would not follow the note," Galvin, 2013 DNH 053, at 20 (emphasis omitted), the transfer of

11

the <u>note</u> among various entities had no effect on ownership of the

mortgage, so a record of such transfers says nothing about which

entity held the mortgage at which time.[5]

---

[5]The Galvins assert, incorrectly, that this court vacated
its order on the motion to dismiss.  As already mentioned in Part
II, <u>supra</u>, though, the court actually denied the Galvins' motion
to vacate that order, concluding that it was both untimely and
wholly without merit.  <u>See</u> Order of May 14, 2013.

The Galvins also seek to revisit the court's conclusion as
to the parties' intent, and have submitted an affidavit from Mr.
Galvin in which he claims that he "never had any intention of
allowing the interests in the mortgage loan to be taken apart and
sold separately," and that his intent was that one entity "would
own all the interests in my mortgage loan."  As Judge Learned
Hand explained over 100 years ago, however:

> A contract has, strictly speaking, nothing to do with
> the personal, or individual, intent of the parties.  A
> contract is an obligation attached by the mere force of
> law to certain acts of the parties, usually words,
> which ordinarily accompany and represent a known
> intent.  If, however, it were proved by twenty bishops
> that either party, when he used the words, intended
> something else than the usual meaning which the law
> imposes upon them, he would still be held, unless there
> were some mutual mistake, or something else of the
> sort.

Hotchkiss v. Nat'l City Bank, 200 F. 287, 293 (S.D.N.Y. 1911),
aff'd, 201 F. 664 (2d Cir. 1912), aff'd, 231 U.S. 50 (1913); see
C & M Realty Trust v. Wiedenkeller, 133 N.H. 470, 476 (1990)
(intent of contracting parties is "determined based on objective
standards, rather than on their subjective, unmanifested states
of mind").  Mr. Galvin, then, cannot disclaim the unambiguous
expression of intent manifested by the fact that he gave the note
to Metrocities and the mortgage to MERS, which he expressly
acknowledged was "a separate corporation" from Metrocities.  (The
court will note only in passing the Galvins' claim, based upon
the Milestone Report, that Metrocities "never had anything to do
with the Galvins' mortgage loan."  For reasons already noted in
the text above, the court cannot rely upon that document.
Indeed, its unreliability is only underscored by the fact that it
does not identify Metrocities as having ever held the note, even

The Galvins' challenge to the assignment on the grounds that it was made in violation of MERS' internal rules fares no better. It is questionable whether the assignment violated MERS' rules at all.  The Galvins' assertion that MERS could not, consistent with its rules, assign the mortgage in the absence of a membership agreement with Metrocities is accompanied by a single citation to those rules generally.  The Galvins do not cite any specific rule prohibiting MERS from assigning a mortgage if the original lender does not have a membership agreement with it, and this court is neither obliged nor inclined to scour all 14 rules, which span 43 pages of clauses and sub-clauses, in search of such a rule when the Galvins themselves have not seen fit to do so.[6]  See United

though the Galvins themselves have admitted that the note "states on its face that it was *[sic]* payable to Metrocities Mortgage, LLC."  Pls.' Statement of Facts (document no. 44-1) at 1.)

In furtherance of their attempt to revisit the issue of the parties' intent, the Galvins also renew an argument the court has previously rebuffed, see Galvin, 2013 DNH 053, at 21 n.6, and claim that paragraph 20 of the mortgage, stating that "[t]he Note or a partial interest in the Note (together with this security instrument) may be sold one or more times without notice to the Borrower," evinces an intent that the documents be transferred together.  The Court of Appeals itself has rejected this argument, however, observing that "this language is permissive and by no means prohibits the separation of the two instruments," Culhane v. Aurora Loan Servs., 708 F.3d 282, 292 n.6 (1st Cir. 2013).  It therefore gets the Galvins no farther on the second go-round.

[6]In their statement of facts, the Galvins--in the course of advancing a separate legal argument as to the assignment's validity, which the court will not address here, see supra n.4-- do cite several clauses of the rules which, they say, provide

States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

In any event, even if the rules include such a prohibition, that is not the type of infirmity the Galvins may rely upon to invalidate the assignment.  In the previous iteration of their complaint, the Galvins sought to challenge the validity of the assignment on other grounds, arguing that the MERS representative who signed it had a "conflict of interest" that precluded her from acting on MERS' behalf.  See Galvin, 2013 DNH 053, at 22-23. In granting the defendants' motion to dismiss that claim, the court noted that "New Hampshire law recognizes the general rule that a debtor cannot interpose defects or objections to an assignment which merely render the assignment voidable at the election of the assignor or those standing in his shoes." Id. at 23 (quoting Drouin v. Am. Home Mortg. Servicing, Inc., 2012 DNH 089, at 7) (internal bracketing omitted).  The Court of Appeals,

---

that "MERS can only act at the direction of the note holder or the note holder's agent" and that a recordable assignment "may be made only for purposes of deactivating a mortgage loan from the MERS system." Pls.' Statement of Facts (document no. 44-1) at 11 & n.8.  The Galvins do not appear to be arguing that these rules are the same rules that prohibit MERS from assigning the mortgage in the absence of a membership agreement with Metrocities.  If they are, in fact, making that argument, it is incorrect.  The rules they have cited contain no such prohibition.

14

applying Massachusetts law, has similarly held that "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void," but "does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Culhane, 708 F.3d at 291.

The Galvins' claim that MERS' assignment was ineffective because it was not made in compliance with MERS' internal rules is exactly the type of challenge that would, at most, render the assignment voidable, not void.  See Hines v. Wells Fargo Bank, N.A., No. 13-cv-167, 2014 WL 897805, at *5 (S.D. Tex. March 6, 2014) (ruling that plaintiff had no standing to contest MERS' assignment of deed of trust under MERS' internal rules because any violations of rules would render assignment "voidable, not void, and immune from challenge by a mere obligor").  A claim that a corporate party has violated its own internal procedures in the course of executing an assignment of its rights amounts to nothing more than a claim that the corporate officer who executed the assignment has exceeded the scope of his or her authority. As both this court and the Court of Appeals have noted, that type of claim merely renders an assignment voidable at the election of the assignor.  See Drouin, 2012 DNH 089, at 7 n.1 (citing Woodstock Soapstone, Co. v. Carleton, 133 N.H. 809, 817 (1991));

15

see also Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 10 (1st
Cir. 2014) (applying Massachusetts law).  And MERS, the assignor,
has not renounced the assignment; to the contrary, as a defendant
in this action, MERS has affirmatively sanctioned it.

The Galvins suggest that they may nonetheless challenge the
assignment here because they are "in direct contractual privity
with MERS (and/or third party beneficiaries thereof)."  Yet
"contractual privity" has no legal significance in this context:
a mortgagor and mortgagee are always in privity with one another,
but a mortgagor still cannot challenge an assignment for reasons
that would merely render it voidable, as just discussed.  As for
the Galvins' assertion that they are "third-party beneficiaries,"
that claim requires a showing that some contract either "calls
for a performance by the promisor, which will satisfy some
obligation owed by the promisee to the third party," or "is so
expressed as to give the promisor reason to know that a benefit
to a third party is contemplated by the promisee as one of the
motivating causes of his making the contract."  Brooks v. Trs. of
Dartmouth Coll., 161 N.H. 685, 697 (2011).  The Galvins have not
even identified the contract they say confers third-party
beneficiary status on them--whether they rely on the MERS rules,
membership agreements, or some other "contract" is left ambiguous

16

by their memorandum and statement of facts--let alone any
language in that contract that could confer such status.

For the foregoing reasons, the court concludes that there is
no genuine issue of material fact as to Mellon's possession of
their mortgage by virtue of a recorded assignment from the
original mortgagee, MERS.

**B.    Mellon's rights in the note**

The defendants have proffered a version of the note which
they maintain is the original.  As discussed in Part II, <u>supra</u>,
the defendants' version includes, on a separate page, an undated
allonge specially indorsing the note--originally payable to
Metrocities--to "JPMorgan Chase Bank, NA, as Trustee."  Mellon,
the defendants say, is entitled to enforce the note because it is
the "successor Trustee" to JPMorgan.  The Galvins have not
proffered an alternative version of the note that, in their view,
is the original; they instead question both the validity of the
allonge and the evidentiary support for the defendants' assertion
that Mellon is JPMorgan's successor.  While the Galvins'
challenges to the validity of the allonge fall flat, the court
agrees that the defendants have not, at this stage, presented
conclusive evidence in support of their position that Mellon is
the successor trustee to JPMorgan.

Before proceeding to the merits of the parties' arguments, a brief detour to explain the governing law is warranted.  As this court has previously noted, a promissory note "is a negotiable instrument subject to the provisions of Article 3 of the Uniform Commercial Code ('UCC')."[7]  LeDoux v. JP Morgan Chase, N.A., 2012 DNH 194, at 11.  Under the UCC, the holder of an instrument may enforce it.  N.H. Rev. Stat. Ann. § 382-A:3-301.  "A holder is a person who is in possession of an instrument drawn, issued, or indorsed to him or to his order."  Ledoux, 2012 DNH 194, at 11-12 (quoting Kenerson v. FDIC, 44 F.3d 19, 24 (1st Cir. 1995)).  At the outset of the loan, then, Metrocities was the holder of the note.  The "allonge, as a paper affixed to the note bearing the signature of a [Metrocities] representative, would--if valid-- serve to indorse the note to [JPMorgan as Trustee], making it the holder."  Id. (citing N.H. Rev. Stat. Ann. §§ 382-A:3-204(a), 382-A:3-205(a); Kenerson, 44 F.3d at 24).  And if, as the defendants claim, Mellon is JPMorgan's successor as Trustee, then Mellon would qualify as the holder under the UCC.  See N.H. Rev. Stat. Ann. § 382-A:3-110(c)(2)(i) ("If an instrument is payable

---

[7]In their memorandum, the Galvins "[a]ssum[e], without agreeing" that a note is a negotiable instrument.  Yet the note would appear to meet the definition set forth in N.H. Rev. Stat. Ann. § 382-A:3-104(a), and the Galvins have not seen fit to offer any explanation for their disagreement with that proposition.  So the court sees no reason to doubt that the Galvins' note is a negotiable instrument governed by Article 3 of the UCC.

to . . . a trust, an estate, or a person described as trustee or
representative of a trust or estate, the instrument is payable to
the trustee, the representative, <u>or a successor of either</u>.")
(emphasis added).

With that background in mind, the court turns its attention
to the Galvins' challenges to the allonge's validity, which, like
their challenges to the assignment of the mortgage, are two in
number.  The Galvins first point out that the allonge is on a
separate page from the rest of the note.  Relying upon <u>West's
Encyclopedia of American Law</u> (2d ed. 2008), they contend that an
allonge is only "necessary when there is insufficient space on
the document itself for the endorsements *[sic]*."  Because there
is "plenty of room on the signature page for an endorsement
*[sic]*," the Galvins assert that "no 'allonge' was or is necessary
and the existence of same calls the validity of the 'JPMorgan
Chase Bank as Trustee' endorsement *[sic]* into question."

This argument stumbles out of the gate.  Whatever weight
<u>West's</u> may carry in some circles, it does not accurately relate
the present state of New Hampshire law insofar as it suggests
that, in the absence of insufficient space on the note itself, an
indorsement may not appear on a separate page affixed to the
note.  The UCC provides, with no provisos or qualifications,
that, "[f]or the purpose of determining whether a signature is

19

made on an instrument, a paper affixed to the instrument is a
part of the instrument." N.H. Rev. Stat. Ann. § 382-A:3-204(a).
The official comment explains that the purpose of this provision
is to make clear that "[a]n indorsement on an allonge is valid
even though there is sufficient space on the instrument for an
indorsement." Id., Off. Cmt.  So whether or not there was
"plenty of room on the signature page" of the note for an
indorsement is irrelevant to both the allonge's necessity and its
validity.  See Wells Fargo Bank, N.A. v. Heath, 280 P.3d 328, 333
n.11 (Okla. 2012) (under the UCC, "it is no longer necessary that
an instrument be so covered with previous indorsements that
additional space is required before an allonge may be used");
Thomas v. Wells Fargo Bank, N.A., 116 So.3d 226, 230 n.5 (Ala.
Civ. App. 2012) (same).

      The Galvins also argue that the indorsement on the allonge
is insufficient to negotiate the note.  They rely upon N.H. Rev.
Stat. Ann. § 382-A:3-302(a)(1), which specifies that, for a party
to be considered a "holder in due course" of an instrument, "the
instrument when issued or negotiated to the holder [must] not
bear such apparent evidence of forgery or alteration or [must]
not otherwise [be] so irregular or incomplete as to call into
question its authenticity."  In the Galvins' view, the absence of
a date on the allonge, and the failure to specify the trust for

20

which JPMorgan was serving as Trustee, "is exactly the kind of 'irregularity' or 'incompleteness' that destroys 'holder' status of the note."  Neither of these omissions has any effect on the validity or efficacy of the allonge.

New Hampshire law does not require an indorsement to be dated, see Moore, 2013 DNH 065, at 23 (citing Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 93 n.10 (D.N.H. 1998)), so the fact that the allonge is undated does not render it "irregular or incomplete."  And while it undoubtedly would have been preferable to specify the trust on behalf of which JPMorgan was acting when the note was indorsed, the failure to do so does not in any way suggest that the note and allonge are not what they purport to be.  See N.H. Rev. Stat. Ann. § 382-A:3-302, Off. Cmt. ("[T]he irregularity or incompleteness must indicate that the instrument may not be what it purports to be."); cf. Triffin v. Somerset Valley Bank, 777 A.2d 993, 1000 (N.J. Super. App. Div. 2001) (for § 3-302 of Uniform Commercial Code to preclude enforcement, "it must be apparent on the face of the instrument that it is fraudulent").  Although the Galvins rely upon In re David A. Simpson, P.C., 711 S.E.2d 165 (N.C. App. 2011), in support of their position, that case does not even cite, much less discuss, the requirements of § 3-302(a)(1) of the Uniform Commercial Code. As a matter of fact, that case recognized that when a note is

21

indorsed to a party in its capacity "as Trustee," but the
indorsement does not specify a particular trust, that merely
raises a factual question as to the identity of the entity to
which the note was indorsed, rather than calling into question
the authenticity of the note or indorsement.  Id. at 172-73.

    That holding segues nicely into the Galvins' argument that
the defendants lack evidentiary support for their claim that
Mellon is JPMorgan's "successor Trustee"--an argument which, as
alluded to earlier, has considerably more to recommend it than
the Galvins' other challenges to Mellon's ability to enforce the
note.  As explained previously, if Mellon is in fact JPMorgan's
successor as Trustee, it is considered a holder entitled to
enforce the note under the UCC.  See N.H. Rev. Stat. Ann. § 382-
A:3-110(c)(2)(i).  The sole piece of evidence the defendants have
proffered in support of their claim that Mellon is JPMorgan's
successor, however, is an "Assignment and Assumption Agreement"
in which JPMorgan and various related entities agree to "sell,
assign, transfer, convey, and deliver" their "right, title and
interest" in various contracts to "The Bank of New York."  This
agreement provides insufficient support for the defendants'
"successor trustee" theory.

    In fact, there are multiple problems with the defendants'
reliance on the "Assignment and Assumption Agreement."  The

22

Galvins astutely point out that the agreement is unauthenticated,
preventing the court from considering it when ruling on the
parties' motions.  See, e.g., Gómez-González, 626 F.3d at 666
("unauthenticated, unsworn document" could not be relied upon at
summary judgment).  Even if it were authenticated, the agreement
makes no reference to the trust for which Mellon currently serves
as trustee, Structured Asset Mortgage Investments II Trust 2005-
AR7 (the "SAMI II Trust"), and therefore provides no support for
the proposition that Mellon is JPMorgan's successor as trustee
for that trust.  Perhaps even more fundamentally, the defendants
have not provided any evidence that "The Bank of New York,"
JPMorgan's counterparty to the agreement, is the same entity as
Mellon.[8]  And, all these problems with the agreement itself
aside, the defendants have provided no evidence on the most
critical issue:  whether the indorsement of the note to "JPMorgan
Chase Bank, NA, as Trustee" was to "JPMorgan Chase Bank, NA, as
Trustee for the SAMI II Trust," or to "JPMorgan Chase Bank, NA,
as Trustee" for some other trust.

   Based upon the summary judgment record, then, the court is
unable to conclude that Mellon is the "holder" of the Galvins'

_____

      [8]The assignment of the Galvins' mortgage states that Mellon
was "formerly known as The Bank of New York," but the court is
not prepared to rely on the assignment, the purpose of which is
merely to document the transfer of an interest in real property,
as an accurate statement as to Mellon's pedigree.

note within the meaning of the UCC, with the attendant right to enforce it.  By the same token, though, the court also cannot conclude that Mellon is <u>not</u> the holder of the note.  The Galvins have not presented any evidence that establishes, for example, that the indorsement was made to JPMorgan in its capacity as trustee for a trust other than the SAMI II Trust, or that, contrary to the defendants' representations, Mellon is not JPMorgan's successor as trustee for that trust.  Thus, on the current record, there is a genuine dispute as to the meaning of the indorsement, and, hence, as to whether Mellon is the current holder of the Galvins' note.[9]

### C.   N.H. Rev. Stat. Ann. § 479:25

Having undertaken the foregoing analysis and determined that Mellon is the holder of the Galvins' mortgage, but that its status as holder of the associated note is uncertain, the court must now consider whether, that uncertainty notwithstanding, Mellon may lawfully foreclose under N.H. Rev. Stat. Ann. §

---

[9]The court must express some wonderment that the defendants have not been able to clarify the indorsement, since JPMorgan is itself a defendant in this action.  Given JPMorgan's status as a defendant, it is equally perplexing that JPMorgan, which contends that Mellon has the right to enforce the note, has not simply indorsed the note to Mellon's order (or in blank), rendering the ambiguity in the present indorsement a mere curiosity.  The court need not ruminate further on these matters at present, but the defendants will have to reckon with them at trial.

479:25.  Section 479:25, as has already been mentioned, permits "the mortgagee or his assignee" to "give such notices and do all such acts as are authorized or required" by the power to foreclose by sale, and the parties take different views of what the term "mortgagee" means.  The Galvins say that a "mortgagee" must hold both the mortgage and associated promissory note.  The defendants rely on the analysis set forth in this court's order on their motion to dismiss, see Galvin, 2013 DNH 053, and say possession of the mortgage alone is enough.

In its previous order, the court held that possession of the note was not a necessary prerequisite to foreclosure where, as here, the note and mortgage were held by separate entities at the outset of the transaction and the borrower expressly agreed that the holder of the mortgage and its successors could foreclose. Id. at 17-21.  Given that holding, the defendants' reliance on the order is understandable.  That order is, however, of limited utility here.  Because none of the parties advanced any argument based upon § 479:25's language to the court, the court based its holding on New Hampshire's common law, and not on the statute's language.  Neither the order on the motion to dismiss, nor any case law either cited by the parties or found by this court, has squarely addressed whether, common law aside, § 479:25 independently requires a foreclosing party to possess both the

25

mortgage and the associated promissory note.  And, for better or worse, this opinion will not resolve that issue, either.

When compelled to address an issue of state law that has not been conclusively resolved by the state's highest court, a federal court must "make an informed prophecy of what the state's highest court would do in the same situation, seeking guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations." Bartlett, 731 F. Supp. 2d at 154-55 (quoting Walton v. Nalco Chem. Co., 272 F.3d 13, 20 (1st Cir. 2001)). Because this issue is one of statutory interpretation, moreover, the court "begin[s] by examining the language of the statute." State v. Farrington, 161 N.H. 440, 445-46 (2011).

In interpreting statutory language, New Hampshire courts "ascribe the plain and ordinary meaning to the words used." Id. at 446; see also N.H. Rev. Stat. Ann. § 21:2 ("Words and phrases shall be construed according to the common and approved usage of the language.").  "[T]echnical words and phrases," however, "and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning." Id.

There is a good argument to be made that both the "plain and ordinary" and "peculiar and appropriate" meanings of the term

"mortgagee" refer simply to the party that holds the mortgage, rather than the associated note.  In 1899, at the time of the enactment of the original version of § 479:25--which likewise employed the term "mortgagee," see 1899 N.H. Laws 257-58 (permitting "the mortgagee or person having his estate in the premises, or any person authorized by the power of sale" to exercise the power)--both legal and lay dictionaries generally defined a "mortgagee" as, simply, the party to whom a mortgage was given, with "mortgage" itself being defined solely by reference to the security given for a debt, rather than the debt itself.  See J. Kendrick Kinney, A Law Dictionary and Glossary 469 (1893); Joseph Worcester, A Universal and Critical Dictionary of the English Language 467 (1881); Noah Webster, An American Dictionary of the English Language 860 (1874).  As discussed in this court's order on the motion to dismiss, moreover, at common law the mortgage and note could be separated from one another and held by different entities.  See Galvin, 2013 DNH 053, at 18-21. At common law, as a matter of fact, the note and mortgage could be in different hands from the outset of the transaction.  See Thurston v. Kennett, 22 N.H. 151 (1850) (note given to an estate and mortgage given to a separate party in his capacity as the representative of the estate).  Possession of the note, then, would not have been necessarily implicit in the term "mortgagee."

27

That, however, is not the alpha and omega of this court's inquiry. The New Hampshire Supreme Court has repeatedly warned against "mak[ing] a fortress out of a dictionary," Clare v. Town of Hudson, 160 N.H. 378, 384 (2010), and has instructed that the words of a statute must be interpreted "in the context of the overall statutory scheme and not in isolation," Farrington, 161 N.H. at 446.[10] The Galvins point out that other provisions of New Hampshire law relating to mortgages seem to presuppose that a "mortgagee" holds the note, by making reference to the receipt of loan payments by the mortgagee. See, e.g., N.H. Rev. Stat. Ann. § 477:29, II (making reference to mortgagor "pay[ing] unto the mortgagee . . . the principal and interest secured by the mortgage"); id. § 479:7-a, I(d) (referring to "the mortgagee receiv[ing] payment of the loan"). From these provisions, it might be inferred that a "mortgagee" must hold both the mortgage and note, since "[a]ll statutes dealing with the same subject-matter are to be considered in interpreting any one of them." In re Liquidation of Home Ins. Co., 89 A.3d 165, 170 (N.H. 2014).

---

[10]This interpretive principle has an august ancestry. Over 2300 years ago, the Confucian philosopher Mencius advised that "those who explain the odes, may not insist on one term so as to do violence to a sentence, nor on a sentence so as to do violence to the general scope. They must try with their thoughts to meet that scope, and then we shall apprehend it." See 1 Terrien de Lacouperie, The Oldest Book of the Chinese, the Yh-king, and Its Authors 62 (1892). Sage advice, from an actual sage.

That inference also encounters a potential stumbling block, though.  While this court generally disfavors exploration of so-called "legislative intent," see, e.g., Dennis v. Town of Loudon, 2012 DNH 165, at 26-27 n.11, the New Hampshire Supreme Court's goal has traditionally been "to apply statutes in light of the legislature's intent in enacting them." N.H. Ass'n of Cnties. v. Comm'r, N.H. Dep't of Health & Human Servs., 156 N.H. 10, 15 (2007).  The statutory provisions supporting the plaintiffs' construction of the term "mortgagee" were enacted decades after the original version of § 479:25.  Those provisions thus provide little insight into the New Hampshire General Court's "intent in enacting" § 479:25 and the meaning of the terms in that statutory section.[11]  See State v. Costella, No. 2013-071, 2014 WL 4477416, at *5 (N.H. Sept. 12, 2014) ("Statutory context includes earlier-enacted statutes, but does not include later-enacted statutes."); cf. also Crowell v. Clough, 23 N.H. 207 (1851) (commenting on lack of clarity and cohesion introduced when "different statutes" are "passed from time to time on the same subject").

---

[11]Indeed, a leading treatise on statutory construction, upon which the New Hampshire Supreme Court "frequently relies," Conservation Law Found. v. Pub. Serv. Co. of N.H., 2013 DNH 167, at 12 n.5, recognizes that "[t]wo statutory provisions containing similar or identical language are not necessarily subject to the same interpretation, as there are other interpretive factors such as the purpose and context of the legislation, and legislative history."  2A N.J. Singer & J.D. Singer, Sutherland Statutory Construction, § 46:5, at 224 (7th ed. 2007).

An examination of the statutory language and scheme, then, does not illuminate the meaning of "mortgagee."  The Galvins try to resolve this problem by appealing to practical considerations. Citing Cadle Co. v. Dejadon, 153 N.H. 376 (2006), they argue that because a foreclosing entity "retains the right to sue the defaulting mortgagor for any deficiency due after a foreclosure sale," a mortgagor could be subjected to competing claims by that entity and the noteholder if § 479:25 is not interpreted to require the foreclosing entity to hold the note.  The premise of this argument, however, is incorrect.  The Cadle Co. case did not hold, or even suggest, that the entity prosecuting a foreclosure sale may bring a post-sale deficiency action to recover the unpaid balance on the note.  Rather, the case merely reiterated the rule, long recognized in New Hampshire law, that an action may be brought on the note after foreclosure.  Although the Cadle Co. court used the term "mortgagee" to refer to the party that could bring such an action, its use of the term seems merely to have reflected the fact that in the case before it (and in the cases upon which it relied), the holder of the mortgage and the holder of the note were the same entity.  So, contrary to the Galvins' argument, the New Hampshire Supreme Court has never expressly countenanced post-foreclosure deficiency claims from a mortgage holder who was not also the note-holder.

30

The Galvins also rely upon Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569 (2012), a recent decision of the Massachusetts Supreme Judicial Court in which that court, interpreting the Commonwealth's analogous statute, held that the term "mortgagee" refers to the holder of both the mortgage and the note.  That decision, however, does not assist the court in determining how the New Hampshire Supreme Court would rule here, since the New Hampshire Supreme Court has held that extrajurisdictional cases, including Massachusetts cases, "offer little guidance in construing our own statutory foreclosure scheme" because of the idiosyncrasies of "each state's statutory scheme."  Wells Fargo Bank v. Schultz, 164 N.H. 608, 611 (2013) (citing Eaton for the proposition that "[s]tatutes play an especially significant role in connection with mortgage foreclosures effected under a power of sale").  The Galvins have not tried to explain, and the court does not see, how the differences between Massachusetts' and New Hampshire's respective statutes are inconsequential when it comes to the present issue of statutory interpretation.

So the various indicators of the meaning of "mortgagee," both intrinsic and extrinsic, do not point to a single, clear answer.  The interpretive problem, while intractable, is, to be sure, not insoluble, and "a federal court sitting in diversity should not simply throw up its hands" when confronted with a

difficult question of state law.  Butler v. Balolia, 736 F.3d
609, 612-13 (1st Cir. 2013).  At the same time, though, "prudence
strongly suggests" that federal courts confronted with important
questions of state law on which there is "no clear guidance" from
the state's highest court "should not rush to answer [those
questions] unnecessarily."  Ruiz-Sánchez v. Goodyear Tire &
Rubber Co., 717 F.3d 249, 255 (1st Cir. 2013).  In such
situations, the better course "is to certify the question to that
court better suited to address the issue."  Pagán-Colón v.
Walgreens of San Patricio, Inc., 697 F.3d 1, 18 (1st Cir. 2012).

　　　　Certification, however, is itself disfavored if it would not
be dispositive of the case.  Ruiz-Sánchez, 717 F.3d at 255-56.
That is potentially the situation here:  even if the New
Hampshire Supreme Court holds that the Galvins are correct and
that Mellon must demonstrate that it possesses the note in order
to lawfully foreclose under § 479:25, that would not dispose of
this case, since there is a trialworthy issue as to Mellon's
possession of the note.  Certification, then, is not the answer--
yet.  Instead, the case will proceed to trial, where the parties
will have the opportunity to present their evidence as to whether
Mellon is or is not in lawful possession of the note.  If, and
only if, the court determines that Mellon does not hold the note,
will it become necessary to rule on the interpretation of

§ 479:25.  The parties' motions for summary judgment are,

accordingly, denied.[12]

## IV.  **Conclusion**

For the reasons set forth above, the parties' respective

motions for summary judgment[13] are DENIED, as are the plaintiffs'

motions to strike.[14]

---

[12]Two final asides:  first, the court recognizes that both
sides have advanced several arguments, unrelated to the issues
discussed in this order, as to why summary judgment should be
granted in their favor on the Galvins' CPA claim.  In view of the
close relationship between the Galvins' declaratory judgment and
CPA claims, it is not worthwhile to address those arguments now.
The parties are free to renew them at trial.

Second, this court's Order of February 14, 2014 permitted
the Galvins to deviate from Local Rule 7.1(a)(1) by combining an
objection to the defendants' motion for summary judgment and
their own motion in one filing.  It did not sanction any further
deviation from that rule, which prohibits "combin[ing] multiple
motions seeking separate and distinct relief into a single
filing."  The court presumes that the Galvins are familiar with
this rule, having been rebuked for their failure to comply with
it on a prior occasion.  See Order of May 14, 2013.  For unknown
reasons, though, they have again violated the rule by requesting
not only that summary judgment be granted in their favor, but
also that the court grant leave to amend the complaint to add new
claims.  Their counsel are advised that further noncompliance
with the Local Rules may result in unfavorable consequences.  See
L.R. 1.3(a), 83.2(b).  The Galvins' request for leave to amend
the complaint comes well after the September 6, 2013 deadline for
amendment of pleadings, see Order of August 1, 2013, and is
therefore denied, no "good cause" having been shown, see Fed. R.
Civ. P. 16(b)(4).

[13]Documents nos. 43, 44.

[14]Documents nos. 45, 48.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: September 25, 2014

cc:   Jamie Ranney, Esq.
      Paul J. Alfano, Esq.
      Peter G. Callaghan, Esq.